WOELFLING, APPELLANT, *v.* GREAT-WEST LIFE ASSURANCE CO., APPELLEE.

212

(No. 7121—Decided June 23, 1972.)

*Messrs. Marshall, Melhorn, Bloch & Belt* and *Mr. Wilbur C. Jacobs,* for appellant.
*Messrs. Doyle, Lewis & Warner, Mr. Thomas D. Smith* and *Mr. William H. Heywood, III,* for appellee.

WILEY, J. Barbara L. Woelfling, plaintiff-appellant, is the designated beneficiary on a certificate of a group life insurance policy issued by the defendant-appellee, Great-West Life Assurance Co. The defendant is a Canadian corporation licensed to do business in Illinois. The certifi-

cate was issued to the plaintiff's spouse, Dr. Melvin Woelfling, a 35-year-old dentist engaged in practice in Toledo, Ohio. Dr. Woelfling was insured for $25,000 under the group policy issued by the defendant to the American Dental Association, in Chicago, Illinois, on August 1, 1934.

Dr. Woelfling, a member of the American Dental Association, filled out an application for coverage under the group policy on February 28, 1967. The application was accepted by the defendant and the insurance became effective as to Dr. Woelfling on March 1, 1967. Dr. Woelfling died on December 22, 1968, from a heart attack, with hypertension and diabetes diagnosed as the contributing factors. Upon the refusal of the insurance company to pay the claim allegedly due pursuant to the policy, the plaintiff filed suit in the Court of Common Pleas. The trial court directed a verdict and entered judgment in favor of the defendant at the close of the plaintiff's case, from which judgment this appeal is taken.

The record indicates that Dr. Woelfling had been a patient of Dr. John J. Newton, M. D., from late 1961 until his death in December of 1968. Dr. Newton testified at trial as a witness for the defendant over the strenuous objection of plaintiff's counsel. Essentially, Dr. Newton's testimony indicated that he had seen Dr. Woelfling eight times, from October of 1961 through August of 1967. Dr. Newton diagnosed mild hypertension and mild diabetes on Dr. Woelfling's first visit in 1961. From 1964 until Dr. Woelfling's death in 1968, Dr. Newton prescribed a regular dosage of naturetin to control the blood pressure condition and orinase to remedy the mild diabetes. The evidence shows that Dr. Woelfling consulted his longtime friend and insurance counselor, James Findlay, before completing the application for insurance with the defendant company. Although Mr. Findlay was not an agent of the defendant, he filled out the application in consultation with Dr. Woelfling. The application was signed by Dr. Woelfling in two places and forwarded to the A. D. A. Group Life Program, Great-West Life Assurance Co., 1035 Field Bldg., 135 S. LaSalle St., Chicago, Illinois, in accordance with the instructions

printed thereon. A photostatic copy of the reverse side of the application is included in Appendix A to this opinion.

The pertinent portions of the application consist of specific questions with regard to the state of the applicant's health. In response to questions (7) and (9), Dr. Woelfling stated, in effect, that he had not consulted a physician in the preceding five years and had no reason to believe that he would require medical treatment in the ensuing year. If either of these inquiries had been answered in the affirmative, Dr. Woelfling would have been required to explain the answers in detail and furnish the defendant with the name and address of the attending physician. By responding in the negative to these questions, Dr. Woelfling misrepresented the state of his health to the defendant.

The issue before this court is whether the trial court erred in concluding that the misrepresentations preclude recovery of the death benefit by the beneficiary as a matter of law. In order to decide that issue, we must determine at the outset whether Illinois law or the law of Ohio is controlling.

The appellant has briefed five separate assignments of error, some of which contain multiple parts. We hold that the substantive law of Illinois is applicable to the terms of the policy for the reasons stated below.

Whether Illinois law or Ohio law applies, we recognize a distinction between a certificate of insurance and the group policy itself. Both the state of Ohio and the state of Illinois have statutory provisions relating to group insurance. R. C. Chapter 3917; Illinois Annotated Statutes Chapter 73, Insurance, Sections 842, 843. 44 American Jurisprudence 2d, Insurance, Sections 1868-1871 *et seq.*

The group policy issued to the American Dental Association by the Great-West Life Assurance Co. was delivered to the American Dental Association in the state of Illinois. When this policy was first issued in 1934, the place of the contract was indicated to be Winnipeg, Canada. However, in the transmittal letter dated February 13, 1935, it was stated:

"Notwithstanding the statement in the policy that the place of contract is the head office of the company in the city of Winnipeg, the construction of the terms of the policy is subject to the provisions of the Illinois statutes made applicable thereto."

The group policy was amended in 1959, and also in other years but the provision of the applicability of Illinois law was retained in paragraph 21 of the 1959 amendment to the policy.

A certificate of insurance was issued to Melvin Leroy Woelfling, effective as of March 1, 1967, in accordance with the terms of the group policy, issued by the Great-West Life Assurance Co., to American Dental Association, Chicago, Illinois. This certificate of insurance was not introduced as an exhibit in the case at the trial but had been presented previously on a motion for summary judgment and was referred to by both counsel during the trial of the case and is being considered by this court as an exhibit properly admitted in evidence in the case under the general jurisdiction of the Court of Appeals. (See Ohio Constitution, Section 3, Article IV, effective 1970.) Section 843 of the Illinois Annotated Statutes, *supra*, requires certain standard provisions for group life policies, one of which is as follows:

"(b) A provision that the policy, the application of the employer or trustee of any association of employees and the individual applications, if any, of the employees insured shall constitute the entire contract between the parties, and that all statements made by the employer or trustee or by the individual employees shall, in the absence of fraud, be deemed representations and not warranties, and that no such statement shall be used in defense to a claim under the policy, unless it is contained in a written application."

This provision is contained in the certificate of insurance issued to Dr. Woelfling. The certificate of insurance also contained the following provision:

"Entire Contract. The group policy, the application therefor, the individual applications and the evidence of

216

insurability of the members supplied to the Company therewith contain and constitute the entire contract between the parties.

"* * *

"The place of the contract for all purposes is the head office of the company. But, notwithstanding that the place of the contract is the Head Office of the Company, the construction of the terms of the contract is subject to the Illinois statutes made applicable thereto."

We hold that in the absence of a statutory prohibition, the group policy, as in any other contract, can provide for the system of state law which should govern the contract. (*Bozeman* v. *Conn. Gen. Life Ins. Co.* (1937), 301 U. S. 196; *Kahn* v. *Great-West Life Assurance Co.* (Sup. Ct. 1970), 307 N. Y. S. 2d 238, 61 Misc. 2d 918; Restatement, Second, Conflicts of Laws, Section 192 (1969), comment h at 605; C. Carnahan, Conflicts of Laws and Life Ins. Contracts, Section 42, at 243 (2d Ed. 1958); *Sherrin* v. *Steel* (6th Cir. 1967), 240 F. 2d 797 cert. denied, 353 U. S. 938 (1957); *Penn. Mut. Life Ins. Co.* v. *Mechanics Sav. Bank & Trust Co.* (6th Cir. 1896), 72 F. 413; Cf., C. Carnahan, *supra*, at 290 (discussion of the effect of a choice-of-law provision with regard to individual life insurance policies); *New York Life Ins. Co.* v. *Block* (Ct. App. 1893), 12 C. C. 224, 6 C. D. 166 (individual life insurance contract containing a choice of law provision).)

In addition to the choice of law explicitly stated in the group policy and also in the certificate of insurance issued to Dr. Woelfling, other factors, such as the place where the group policy was delivered, the place where the group policy was entered into, the desirability of uniformity and certainty of the law applicable to certificates of insurance under group policies covering thousands of members of the American Dental Association throughout the United States, and the place where the principal office of the American Dental Association is located, indicate that the law of Illinois should apply. (See C. Carnahan, *supra*, at 243; *Bozeman* v. *Conn. Gen. Life Ins. Co., supra*; *Sherrin* v. *Steel, supra*; *Penn. Mut. Life Ins. Co.* v. *Mechanics Sav.*

*Bank & Trust Co., supra*; Restatement, Second, *supra*, comment h. at 605.)

Plaintiff contends that the law of Ohio, rather than the law of Illinois should govern this dispute. Assignment of error No. 1C consists of several specific arguments advanced in support of that contention. For the reasons hereinafter set forth, assignment of error No. 1C is not well taken.

The plaintiff argues that the choice of law provision contained in the group policy is not broad enough to include the entire body of Illinois law. We find the plaintiff's argument to be without merit in that the language of the choice-of-law provision is sufficient to incorporate by reference the applicable provisions of the local law of Illinois.

In the alternative, the plaintiff urges that the choice-of-law provision is of no legal effect because the Illinois statutes are repugnant to the public policy of the state of Ohio. The plaintiff also contends that a choice-of-law provision in an adhesion contract is invalid. We cannot agree with either of these propositions. The Illinois statutes are not violative of any established public policy of this state and the public policy of Ohio is not violated by construing a contract made in Illinois by the law of that jurisdiction. We also conclude that the group insurance policy has few of the elements of a typical adhesion contract. The group policy consists of a contract between the defendant-insurer and the American Dental Association as well as the certificates of insurance issued to the individual subscribers. The substantial bargaining position of the American Dental Association and the resultant power to negotiate terms favorable to the individual subscribers precludes the notion that the group policy is a typical adhesion contract. See, *e. g.*, Dauer, Contracts of Adhesion in Light of the Bargaining Hypothesis, 5 Akron L. Rev. (1972).

The plaintiff further contends that this court should interpret the choice-of-law provision in the policy as a reference to the whole law of Illinois. The plaintiff argues that the whole law of Illinois, including the Illinois conflicts of law rules, would require this court to apply Ohio

law in the instant case. The thrust of this argument is that an Ohio court should refer to the whole law of Illinois, and decide the case as if the court were sitting in Illinois, which would result in the application of Ohio law. We need not decide whether an Illinois court would apply Ohio law if faced with the factual situation in the instant case. We hold that in the absence of any contrary indication of intention, the reference to Illinois law embodied in the policy is a reference to the local law of Illinois. Restatement, Conflict of Laws 2d, Section 186 (1969), comment g at 559.

Finally, the plaintiff urges that a false conflict exists between the law of Illinois and the law of Ohio. We reject this contention for the reason that R. C. 3917.06 (c) and Ill. Rev. Stat., Chapter 73, Sec. 766 are in conflict. See Leflar, American Conflicts of Law, Section 103, False Conflicts, page 237 *et seq.*

A copy of the application was not attached to the certificate of insurance issued to Dr. Woelfling. In assignment of error No. 1A, the plaintiff contends that under Ohio law the failure of the defendant-insurer to forward a copy of the application prevents the insurer from availing itself of a defense based upon the fraudulent misrepresentations of the insured. However, under the law of Illinois, which is dispositive of this issue, the failure of the insurance company to send a copy of the application to the insured or his beneficiary does not preclude the company from defending on the grounds of misrepresentation. Ill. Rev. Stat., Chapter 73, Section 843; *Continental Assur. Co. v. Henson* (Ky.), 181 S. W. 244, 431. Moreover, under Ohio law, the defense of fraudulent misrepresentation would be available to the insurer despite the fact that a copy of the application was not attached to the certificate or the group policy in that the sanction provided in R. C. 3911.04 is not applicable to group insurance controlled by R. C. 3917.06.

In assignment of error No. 1B, appellant argues that the trial court erred in admitting the application for the group policy into evidence. R. C. 3911.06 provides that no answer to any interrogatory made by the applicant in his application for a policy shall be used in evidence at any

trial to recover upon such policy unless it is clearly proved that such answer was willfully false. The plaintiff contends that this statute precludes the admission into evidence of Dr. Woelfling's answers to the interrogatories appearing on the defendant's application, in the absence of proof tending to show that such answers were willfully false. The plaintiff characterizes the estoppel created by R. C. 3911.06 with respect to the admissibility of the application, as a "procedural limitation" *i. e.*, a rule of evidence, and argues that matters of "procedure" are governed by the law of the forum.

At the outset, we conclude that R. C. 3911.06 is applicable to individual life insurance contracts but does not apply to group policies under Ohio law. The Ohio statute which provides for the quantum of proof necessary to establish the defense of misrepresentation in an action on a *group* policy is found in R. C. Chapter 3917, entitled Group Life Insurance. R. C. 3917.06 provides that "* * * all statements contained in [an] application for group insurance are deemed, *in the absence of fraud,* representations and not warranties, * * *." (Emphasis ours.) An insurer is required to prove that the applicant's misrepresentations were fraudulent in order to successfully defend against a suit on the policy.

Pursuant to Ill. Rev. Stat. Chapter 73, Section 766, a misrepresentation made by the insured in the written application for insurance is a defense to an action on the policy if it was made "with actual intent to deceive *or materially affects either the acceptance of the risk or the hazard assumed by the company.*" (Emphasis added.) Thus, under Illinois law, a misrepresentation which is material, even if made in good faith, constitutes a defense to an action on the policy. *Continental Assurance Company* v. *McCarty* (1939), 302 Ill. App. 10, 23 N. E. 2d 385.

R. C. 3917.06 and Ill. Rev. Stat. Chapter 73, Section 766, establish substantive rights in that each of these statutes is determinative of the quantum of proof necessary to establish the defense of misrepresentation in an action to recover the death benefit pursuant to a group in-

surance contract. Cf. 9 Ohio Jurisprudence 2d Conflicts of Laws, Section 114; 16 American Jurisprudence 2d, Conflicts of Laws, Section 77. See *Interstate Motor Freight Co.* v. *Johnson* (1929), 32 Ohio App. 363. The primary purpose of these two statutes is to affect the decision on the issue of the defense of misrepresentation rather than to regulate the conduct of the trial. See, *e. g., Pilot Life Ins. Co.* v. *Boone* (5th Cir. 1956), 236 F. 2d 457. Illinois law is controlling with regard to this substantive issue and defendant was not required to prove fraud with respect to the misrepresentations made by Dr. Woelfling.

In the second assignment of error, the plaintiff urges that the testimony of Dr. John J. Newton, the physician who treated the insured for diabetes and hypertension, was privileged, should have been excluded, and the insurer had no evidence to support the defense of misrepresentation; consequently, the plaintiff contends that the trial court erred in failing to direct a verdict in her favor.

The Illinois physician-patient privilege statute, Ill. Rev. Stat., Chapter 51, Section 5.1, provides:

"No physician or surgeon shall be permitted to disclose any information he may have acquired in attending any patient in a professional character, necessary to enable him professionally to serve such a patient, except only * * * (3) *with the expressed consent of the patient* * * *, (4) in all civil suits brought by or against the patient, his personal representative, *a beneficiary under a policy of insurance,* or the executor or administrator of his estate *wherein the patient's physical or mental condition is an issue* * * *." (Emphasis added.)

Pursuant to subsection (4) of the above statute, a specific exception to the physician-patient privilege is created. Thus, a physician is permitted to testify in any civil suit brought by a beneficiary under an insurance policy wherein the patient's physical condition is an issue. The physician-patient privilege is a substantive right and not merely a rule of evidence. *State, ex rel. Galloway,* v. *Industrial Comm'n.* (Ct. of App. 1938), 27 Ohio Law Abs. 697, paragraph 2 of the syllabus, affirmed, 134 Ohio St. 496 (1938).

The issue of whether it was proper to allow Dr. Newton to testify is controlled by Illinois law.[1] It was not error to admit into evidence Dr. Newton's testimony. Assignment of error No. 2 is not well taken.

Assuming, *arguendo*, that the law of Ohio is dispositive of this issue, the result is the same. R. C. 2317.02 provides, in part:

"The following persons shall not testify in certain respects:

"(A) * * * a physician, concerning a communication made to him by his patient in that relation, or his advice to his patient, but the * * * physician may testify by express consent of the * * * patient * * *."

Unlike the Illinois statute, R. C. 2317.02 does not make a specific exception to the privilege for suits brought on an insurance policy wherein the health of the patient is an issue. However, the Ohio statute does provide that the patient may expressly waive the privilege and allow the physician to testify. The defendant-insurer contends that the decedent expressly waived the privilege when he signed an authorization contained in the application. (See Appendix A.) The authorization is particularly emphasized by the fact that it was expressed in two separate places on the application, the first of which is incorporated in other material wherein Dr. Woelfling made certain declarations concerning his own health, and the second appears near the bottom of the application following the words in large capital letters, "AUTHORIZATION." The authorization provides as follows:

"I hereby authorize any hospital in which I have been a patient or any physician who has examined me or treated me to furnish the Great-West Life Assurance Company with detailed information regarding my history and examinations; including the dates, symptoms, findings, diagnosis and treatment."

The plaintiff contends that there is a substantial distinction between an "authorization" and a "waiver" of

---

[1]Restatement of Conflicts of Laws 2d, Chapter 6, Procedure, Section 139; *Levy* v. *Mutual Life Ins. Co.*, 56 N. Y. S. 2d 32.

the physician-patient privilege. According to this rationale, the legal effect of an authorization clause, such as the clause in the instant case, is merely to permit the insurance company to gather information relative to the health of the applicant and to make inquiries of the applicant's physicians before assuming the risk of insuring his life. The plaintiff argues that such an authorization is far short of a waiver of the privilege prohibiting the physician from giving testimony in a court of law. Several cases have been cited by the plaintiff in support of this theory. See, e. g., Noble v. United Benefit Life Assurance Co. (1941), 230 Iowa 471, 297 N. W. 881; American Republican Life Ins. Co. v. Edenfield (1957), 228 Ark. 93, 306 S. W. 2d 321.

We do not accept the distinction between "authorizations" and "waivers." The question in the case at bar is whether the defendant-insurer would have accepted the risk of insuring Dr. Woelfling if it had been apprised of the truth concerning his health. The plaintiff concedes that the defendant was "authorized" by reason of the provision to make inquiries of any physician who had treated Dr. Woelfling. Presumably, the purpose of the "authorization" was to aid the insurance company in deciding whether to accept the risk of insuring the applicant. In the instant case, when Dr. Woelfling falsified his answers to the defendant's interrogatories, the company was precluded from obtaining the very information which it was "authorized" to compile. Thus, under the theory which distinguishes between an authorization and a waiver, an insurance company has no effective method of guarding against fraud or misrepresentation during the period of contestability. An applicant could effectively prevent the insurance company from making the so-called "authorized" investigation by representing himself to be in perfect health. The applicant's misrepresentations could induce the company to accept the risk. The decedent's beneficiary could then preclude the defense of misrepresentation during the contestability period by asserting the physician-patient privilege at trial. The protection of the interests of the insured do not require such an anomalous rule.

In *New York Life Ins. Co.* v. *Snyder* (1927), 116 Ohio St. 693, the Ohio Supreme Court was called upon to determine the legal effect of the following waiver provision:

"I expressly waive on behalf of myself and of any persons who shall claim any interest in any policy issued hereunder, all provisions of law forbidding any physician or other person who has heretofore attended or examined me, or may hereafter attend or examine me, from disclosing any knowledge or information which he thereby acquired."

The Supreme Court held that the enforcement of such a waiver was not against public policy. The court used the following language in explaining the reason for the holding:

"To hold otherwise would be to open wide the doors of both fraud and suicide with respect to the procuring of life insurance, and it would jeopardize the soundness and safety of life insurance in general."

The plaintiff attempts to distinguish the Snyder case on the grounds that the waiver provision in that decision was broader than the provision before this court. However, the rule established in *Snyder* was designed to alleviate the problem which faces the insurance company in the instant case. We hold that the *Snyder* decision is controlling in the case before this court.

There is respectable authority from other jurisdictions which supports the reasoning of the Ohio Supreme Court in *Snyder*. In *Torbenson* v. *Family Life Ins. Co.* (1958), 163 Cal. App. 2d 40, 329 P. 2d 596, the appellate court was asked to determine the effect of the following authorization with respect to the physician-patient privilege:

"I hereby authorize and request you to disclose any and all information and records concerning my condition when under observation by you, if requested to do so by Family Life Ins. Co. * * *"

The appellate court affirmed the trial court's ruling and held that the authorization effected a waiver of the physician-patient privilege. See, also, *Crest Catering Co.*

v. *Superior Court* (1965), 62 Cal. 2d 274, 398 P. 2d 150 (wherein Chief Justice Traynor's majority opinion cites *Torbenson* with approval). In *Oklahoma Protective Ass'n.* v. *Montgomery* (1932), 160 Okla. 135, 16 P. 2d 135, the Supreme Court held that an authorization similar to the one before this court was an effective waiver of the physician-patient privilege, stating, at page 138:

"The general doctrine is that where the insured, under an ordinary case, makes an agreement like this, it will control."

See, also, *George* v. *Guarantee Mut. Life Co.* (1944), 144 Neb. 285, 13 N. W. 2d 176; Cf. *Harpman* v. *Devine* (1937), 133 Ohio St. 1; *Nationwide Mutual Ins. Co.* v. *Jackson* (1967), 10 Ohio App. 2d 137; 56 Ohio Jurisprudence 2d 670, Waiver of Privilege, Section 251; *Ronald* v. *Young* (1963), 117 Ohio App. 362.

It is true that the law is no respecter of persons; nevertheless, the law does not operate in a total vacuum. Some consideration must be given to the fact that this is a group policy limited to members of the American Dental Association. Such membership is composed of well-educated, intelligent individuals who are members of a profession in which a high ethical standard is advocated. In return for presenting a policy to each member of such a select group in the sum of $20,000 or $25,000 a year for the relatively low premium of $75 per year, an insurance company should be able to expect a certain degree of integrity and responsibility from the individuals answering the very direct, uncomplicated questions contained in the application for insurance, and is entitled to rely on the truthfulness of the answers given.

The third assignment of error, to-wit that the court erred in directing a verdict for the defendant, is divided into three parts. As to Part A, wherein the appellant argues that the court may not direct a verdict for the party with the burden of proof, the court finds the same not well taken. (*Jenkins* v. *Metropolitan Life Ins. Co.* (1961), 171 Ohio St. 557; *Walsh* v. *Sisters of Charity of St. Vincent's Hospital* (1933), 47 Ohio App. 228, paragraph two of the

syllabus; *National Exchange Bank of Wheeling* v. *Savin* (1937), 58 Ohio App. 207, paragraph two of the syllabus; *Worthington, Bellows & Co.* v. *Whitman* (1921), 15 Ohio App. 161.)

Part B of assignment of error No. 3, wherein appellant contends that the court may not direct a verdict by accepting testimony of interested witnesses when reasonable minds could differ as to whether Dr. Woelfling's misstatements were material, is found not well taken for the reason that the testimony of the interested witnesses was consistent, probable, and not impeached or disputed by other testimony. (*Jenkins* v. *Metropolitan, supra*; *Mahoning Natl. Bank* v. *Youngstown* (1944), 143 Ohio St. 523, *Walsh* v. *Sisters of Charity, supra*; *Tolar* v. *Metro. Life Ins. Co.* (1948), 297 N. Y. 441, 80 N. E. 2d 531.)

Part C of assignment of error No. 3, to wit, "Illinois law permits the question of the materiality of the misrepresentations to be decided by the jury," sets forth a correct statement of the law, but it is not applicable in the instant case. This assignment of error is found not well taken. The false statement made by Dr. Woelfling in the application for the group insurance, that he had not seen a doctor for any purpose the previous five years, was sufficient in itself to be a material misrepresentation in that it precluded the insurance company from obtaining any information whatsoever from the attending physician at that time. When coupled with the other statements in the application, together with the statement by the applicant that he was "not aware of any facts, conditions or circumstances * * * connected with my own health * * * which might affect the risk of insurance on my life and that my answers and statements to the questions herein contained are full, complete, and true and a condition of this application by placing of insurance on my life * * *," the materiality of the false statement is established as a matter of law. (*American Natl. Bank* v. *Certain Underwriters at Lloyd, London* (7th Cir. 1971), 444 F. 2d 640; *Life Ins. Co. of N. America* v. *Roberson* (S. D. Ill. 1967), 276 F. Supp. 639; Rule 50, Ohio Rules of Civil Procedure.)

The court finds that the allegations in assignment of error No. 4 that defendant failed to give proper notice, etc., are not substantially supported by the record and any partial failure of the defendant to comply with Civil Rule 44.1(3) was not prejudicial. Cf. *Litsinger Sign Co.* v. *American Sign Co.* (1967), 11 Ohio St. 2d 1; R. C. 2317.44-.45.

Assignment of error No. 5 is related to the exclusion of evidence by the trial court. The plaintiff claims that certain evidence was admissible on the issue of the materiality of the misrepresentations made on the application. As we have already ruled that representations made on the application were false and were material as a matter of law, this assignment of error is not well taken. It is further not well taken in that the appellant failed to designate the rulings of the trial court which were alleged to be erroneous.

In the reply brief the plaintiff claims for the first time as an additional argument under Assignment of Error No. 3, that pursuant to R. C. 3917.06, the policy became incontestable after two years from its date of issue. Plaintiff argues that this section is designed to force the insurance company into a contest in court, even in the instant case where death occurred within two years of the application. The defendant correctly asserts that the plaintiff's failure to raise the question in the trial court precludes her from litigating it for the first time in the Court of Appeals. Generally, in order to preserve the integrity of the decision-making process in the lower court, the litigants are required to raise all legal issues of consequence during the trial and an appellate court is not the proper forum in which to present substantial questions for the first time. Plaintiff has stated no reason for the failure to raise the issue at the trial level, nor has plaintiff stated any reason why the general rule should not apply. *Republic Steel Corp.* v. *Board of Revision* (1963), 175 Ohio St. 179; 3 Ohio Jurisprudence 2d 38, Appellate Review, Section 185.

An additional reason for overruling the final assign-

ment of error is that the incontestability provision in the contract before the court is controlled by Illinois law. (Restatement of Conflicts of Law 2d, Section 192 (1969), comment h at 605. Ill Rev. Stat., Chapter 73, Section 843 provides that a group policy is incontestable "after two years from its date of issue *during the lifetime of the insured.*" (Emphasis added.) *Section 17 of the* master policy provides:

"* * * no statement made by any Member insured under this policy relating to his insurability shall be used in contesting the validity of the insurance with respect to which such statement was made after such insurance has been in force prior to the contest for a period of two years *during such Member's lifetime* * * *." (Emphasis added.)

By the provisions of the Illinois statute and the terms of the policy, the period of incontestability is tolled at the death of the insured.

*Judgment affirmed.*

POTTER, P. J., and BROWN, J., concur.

BROWN, J., concurring. In disposing of the second assignment of error, which deals with the controversial waiver of the privilege of decedent's physician to testify concerning his treatment of Doctor Woelfling, I have a hesitancy to reach a conclusion that in this case the privilege against testimony of the physician was waived concerning the physician's communications with, or advice to Dr. Woelfling, or the physician's diagnosis or treatment incident thereto. However, I concur in the judgment and in the excellent analysis of the many legal questions raised in this case, and of the applicable legal principles as explained in the majority opinion except with reference to the subject of the physician-patient privilege.

Nevertheless, this differing view from the majority opinion would not change the ultimate result; namely, the right of the defendant to a directed verdict and judgment as a matter of law.

The majority opinion concludes that the physician-patient privilege is a substantive right and not merely a rule of evidence, relying on *State, ex. rel. Galloway*, v. *Industrial Commission* (Ct. of App. 1938), 27 Ohio Law Abs. 697, paragraph two of the syllabus, and on that basis applies the Illinois physician-patient privilege statute, Ill. Rev. Stat. Chapter 51, Section 51, because the parties have contracted to apply substantive Illinois law to this insurance policy. The contract provision in the policy provides that "the construction of the terms of the contract is subject to the Illinois statutes made applicable thereto," and thus parties to this contract intended by such language that only substantive Illinois law, and not procedural Illinois law, should apply to any judicial proceedings involving the rights of any person having any interest in this insurance contract.

Moreover, it is a fundamental rule and well settled that matters of procedure, or remedial rights, are governed by the law of the forum: that is, the law of Ohio, in this case. *Alropa Corp.* v. *Kirchwelm* (1941), 138 Ohio St. 30; 9 Ohio Jurisprudence 2d 823, Conflict of Laws, Section 108; 16 American Jurisprudence 2d 120, Conflict of Laws, Section 76.

Well settled and corollary thereto is the rule that matters of evidence relate to the remedy and not the right, and it follows that the law of the forum, the law of Ohio in this case, determines the admissibility, competency, quality and degree of evidence. *Kanaga* v. *Taylor* (1857), 7 Ohio St. 134; *McDougall* v. *Glenn Cartage* (1959), 169 Ohio St. 522; 3 Beale, Conflict of Laws, Section 593.1, at 1606 (1st Ed. 1935); Restatement of Conflict of Laws, 2d Section 192 (1969), comment (e) at 603; *Id.* Section 139 (2), comment (e) at 389; 16 American Jurisprudence 2d 120, Conflict of Laws, Section 76; R. Leflar, American Conflicts Law, Section 123, at 294 (2nd Ed. 1968); 15A Corpus Juris Secundum 524, Conflict of Laws, Section 22 (1); *Id.* at 22(10).

The statement in *State, ex rel. Galloway*, v. *Industrial Commission, supra*, that the statute as to privileged com-

munications creates a substantive right is obiter dicta in that case, involves a case which did not contain a conflict of laws question, was unsupported by any citation of authority, and appears to be a casual, unreflecting observation unwittingly made and not reinforced by any reason or process of reasoning for its utterance. The statement in *Galloway, supra*, was unnecessary for the correct decision that the Court of Appeals made in that case, and should be rejected because it is contrary to sound reason and the great weight of authority as cited above.

Accordingly, the law of Ohio, and specifically the physician-patient privilege statute of Ohio, R. C. 2317.02 (A), as quoted in the majority opinion, applies in this case.

The written authorization signed by Dr. Woelfling which authorizes any physician who examined or treated the insured only to furnish the defendant with detailed information regarding medical history, examination, diagnosis and treatment, is independent of any judicial proceedings wherein the physician gives sworn testimony, and such written authorization clearly omits any mention of waiver by the patient, Dr. Woelfling, of the physician-patient privilege which prohibits testifying by the physician.

According to R. C. 2317.02 " * * * [a] physician may testify by express consent of the * * * patient * * *." There was no express waiver of the privilege which prohibits testimony of the physician. The written waiver must be express, distinct and unequivocal. *Harpman* v. *Devine* (1937), 133 Ohio St. 1; *Jenkins* v. *Metropolitan Life Ins. Co.* (1960), 113 Ohio App. 163; affirmed 171 Ohio St. 557 (1961); *Noble* v. *United Benefit Life Assurance Co.* (1941), 230 Iowa 471, 297 N. W. 881; *Rutten* v. *Investor's Life Insurance Co.* (1966), 258 Iowa 749, 140 N. W. 2d 101; *American Republican Life Ins. Co.* v. *Edenfield* (1957), 228 Ark. 93, 306 S. W. 2d 321; *Mouzoukos* v. *Mutual Benefit Health and Accident Assn.* (1927), 69 Utah 309, 254 P. 1005; 97 Corpus Juris Secundum 856, Witnesses, Section 310; Cf. *New York Life Ins. Co.* v. *Snyder* (1927), 116 Ohio St. 693; (distinguishable because of the waiver language); *Nation-*

*wide Mutual Ins. Co.* v. *Jackson* (1967), 10 Ohio App. 2d 137; *Ronald* v. *Young* (1963), 117 Ohio App. 362.

Thus, it is my view that in this case the physician-patient privilege was not waived so as to permit Dr. Newton to testify concerning the history, extent and nature of examinations, diagnosis, and treatment of his patient, Dr. Woelfling.

In spite of the existence of the physician-patient privilege, R. C. 2317.02 does not prevent testimony by a physician as to the fact that he was consulted in a professional capacity by a person on a certain date or dates. Where it has been established that in an application for a policy of life insurance an insured has given untrue negative answers to questions whether he had consulted a physician within a specified number of years and a person claiming under the policy contends that the insurer has not clearly proved that such answer was willfully false and fraudulently made, the one claiming under the policy has the burden of going forward with the evidence tending to prove that such consultation or consultations was not for or not known by the insured to be for any serious ailment or condition, and where there is no evidence tending to prove that the insured made an honest mistake in giving such negative answer, such answer will be held as a matter of 'aw to have been willfully false and fraudulently made. *Jenkins* v. *Metropolitan Life Ins. Co.* (1961), 171 Ohio St. 557 at 562, paragraphs 2, 3 and 4 of the syllabus; *Vincenzo* v. *Newhort* (1966), 7 Ohio App. 2d 97, affirmed 11 Ohio St. 2d 63 (1967); *D & P Terminal Inc.* v. *Western Life Ins. Co.* (N. D. S. D. 1966), 250 F. Supp. 388; Wigmore, Evidence, Section 284, at 824 (3rd Ed.); DeWitt, Privileged Communications between Physician and Patient, Section 47, at 146, 148.

Therefore, according to *Jenkins, supra,* defendant had a right to elicit from decedent Woelfling's attending physician, Dr. Newton, that decedent Woelfling had medical consultations within the five-year period before Dr. Woelfling signed his application for life insurance. The plaintiff

offered no evidence tending to prove that the insured made an honest mistake in giving such negative answers. Therefore, pursuant to paragraph three of the syllabus in *Jenkins, supra*, such answers of the insured are held as a matter of law to have been willfully and fraudulently made, and the quantum of proof imposed upon the insurer under either Illinois or Ohio law is satisfied, and by reason thereof the defendant, Great-West Life Assurance Co., is entitled to a directed verdict. The trial court correctly directed the verdict for the defendant.

*(Appendix A)*

INDIVIDUAL APPLICATION FOR A.D.A. GROUP LIFE INSURANCE
*(Continued)*

|  | | YES | NO |
|---|---|---|---|
| 6 | Have you had any ailment, injury, or disease within the last five years which has resulted in your being away from work 10 days or more? | [ ] | [x] |
| 7 | Have you consulted a physician or practitioner for any purpose in the last five years? | [ ] | [x] |
| 8 | Have you ever applied for insurance which has been declined, postponed, or modified in any way? | [ ] | [x] |
| 9 | Have you any reason to believe you will require medical or surgical treatment during the coming year? | [ ] | [x] |

*If you have answered yes to any of the above questions, please explain in detail below. If a doctor was consulted, give name and address of doctor, in full, and date and reason for consultation.*

QUESTION NUMBER [ ] _____

I hereby declare that I am not aware of any facts, conditions or circumstances not mentioned above, connected with my own health or that of my family which might affect the risk of insurance on my life and that my answers and statements to the questions herein contained are full, complete and true and a condition of this application for placing of insurance on my life, and I hereby authorize any hospital in which I have been a patient or any physician who has examined me or treated me to furnish The Great-West Life Assurance Company with detailed information regarding my his-

232

tory and examinations; including the dates, symptoms, findings, diagnosis and treatment.

Dated at      Toledo Ohio      this      28th      day of      February 1967
              City or Town    State

/s/ Melvin L. Woelfling DDS

Signature of Member

AUTHORIZATION I hereby authorize any hospital in which I have been a patient or any physician who has examined me or treated me to furnish The Great-West Life Assurance Company with detailed information regarding my history and examinations; including the dates, symptoms, findings, diagnosis and treatment.

Date      2-28      19  67      /s/ M. L. Woelfling DDS

Signature of Member