PERKINS, APPELLEE, *v.* NATIONWIDE LIFE INS. CO., APPELLANT.

(No. 73AP-181—Decided January 15, 1974.)

Messrs. *Thompson, Swope, Burns & Biswas*, for appellee.

Messrs. *Crabbe, Brown, Jones, Potts & Schmidt* and Mr. *Glenn B. Redick*, of counsel, for appellant.

*Per Curiam.* This matter involves an appeal of a judgment on a verdict rendered for the plaintiff, Rose D. Perkins, in the amount of $25,000, in an action brought upon an insurance policy on the life of Frederic H. Perkins, the deceased husband of the plaintiff herein.

The facts in brief are that the husband, who was a member of the Ohio National Guard, had been issued a certificate of insurance evidencing a group insurance policy issued to the Ohio National Guard Association, the effective date of such policy being July 1, 1970. The evidence showed that the master insurance policy issued to the Ohio National Guard was kept in the office of the Guard, and that each member of such Guard had received a like certificate evidencing his basic insurance coverage.

The members of the Guard were permitted to obtain supplemental life insurance up to the face amount of $25,-000, and the deceased Mr. Perkins had filled out and submitted to the company an application for this amount. Subsequently, an additional certificate of insurance was directed to Mr. Perkins for the supplemental amount of $25,000 of insurance, such coverage being effective December 1, 1970.

Frederic H. Perkins died on July 22, 1971, and Mrs. Perkins filed with the defendant company the proof of death and other documents requested by the insurance company.

Defendant Nationwide paid the $1,000 face amount of the original group policy, but denied the claim for the $25,000 supplementary benefit, stating that it was rescind-

ing the supplementary coverage because of false material statements in the application for such supplemental coverage. The defendant company tendered a return of the premiums and the plaintiff, the appellee herein, immediately filed suit on the policy.

Nationwide filed an answer to the complaint in which it claimed as an affirmative defense that the decedent had not filled out the application for insurance truthfully and accurately, and, also, that the decedent was disabled at the time the life insurance should have become effective so that the certificate of insurance never, in fact, became effective.

The case came on for trial before the court and a jury, and during the trial the court ruled that the defendant company was not allowed to disclaim coverage on the basis of fraud, in that a copy of the application for such supplemental coverage had never been furnished to the insured or his beneficiary during the lifetime of the insured. Therefore, the jury never had before it the issue of fraud related to the application for such policy of insurance.

It was agreed by and between all parties herein that the deceased Frederic Perkins had been furnished a copy of the policy relating to the $1,000 coverage, and also had been furnished a copy of the policy covering the supplemental benefits of $25,000, but that the defendant company had not furnished the deceased a copy of his application for such insurance.

The record shows that a copy of the application in question was directed to, and received by the counsel for the plaintiff beneficiary herein.

The master policy and the certificates of insurance issued by the defendant Nationwide Insurance Company contain the following language:

"Incontestability. The validity of the Policy provisions to Life Insurance Benefits will not be contested, except for non-payment of premium, after they have been in force for one year from the Policy Effective Date. The validity of the Life Insurance on any Certificateholder will not be contested, except for non-payment of premium, after such insurance has been in force for one year during

his lifetime. *No statement made by a Certificateholder relating to his insurability will be used in any contest unless (a) it is contained in a written application signed by him, and (b) a copy of the application has been furnished to him or to his beneficiary."*

The defendant insurance company desired to show, at the time of the trial, that the application which Mr. Perkins sent to the Nationwide Insurance Company for the supplemental life insurance coverage set forth that his only prior health difficulty was an appendectomy which he had in 1943. The defendant company wished to show further, by the introduction of evidence, that in fact Mr. Perkins was suffering, and had suffered for some time, from diabetes, hemorrhoids, digestive problems, and had been hospitalized for a malignancy in his stomach, and that none of such information was contained in his application for insurance.

However, the trial court ruled that the language of the incontestability clause would not permit the disclaimer of coverage on the basis of fraud, since a copy of the application had never been furnished to the insured, or his beneficiary, during the lifetime of the insured.

The defendant Nationwide Insurance Company sets forth as its assignment of error that the trial court erred in failing to allow the defendant to introduce into evidence the application for supplemental life insurance, thereby permitting the company to defend the lawsuit on fraud and material misrepresentation.

Also, at the outset of the trial, the plaintiff contended that the defendant was estopped from claiming fraud in the application of the deceased for his insurance because such company had failed to comply with the provisions of R. C. 3911.04, which, it was claimed, provides that the insuring company must return a copy of the application, along with the policy, to the person taking such policy, and plaintiff argues that such must be done during the lifetime of the insured.

However, the trial court rejected the plaintiff's argument that R. C. Chapter 3911 applies to all life policies, but, conversely, held that, as related to group life insurance policies, the sections of law which would be applicable

would be R. C. 3917.01 to R. C. 3917.07, and that R. C. Chapter 3911 applies to the issuance of all other regular life insurance policies.

Therefore, the plaintiff, in her cross-appeal, sets forth, as her assignment of error, the following:

"The court erred in ruling that Chapter 3911, Revised Code, and in particular that Section 3911.04, Revised Code, does not apply to group policies so as to bar the use of the deceased Frederic Perkins' application and medical statement to prove fraud in procurement of the policy."

After a trial of the matter, the jury, apparently on the basis of the evidence of the deceased's work record in the weeks immediately prior to his death, rejected the defense that the deceased never was free from disability, and that the policy did not become effective, and found for the plaintiff for the face amount of the supplemental policy of $25,000.

The two chapters of Ohio law which are involved in this matter are those referred to previously—Chapter 3911, dealing generally with domestic and foreign life insurance companies, and Chapter 3917, dealing specifically with group life insurance.

The particular section of Chapter 3911 which is claimed by the plaintiff to be applicable to this case is R. C. 3911.04, which reads as follows:

"Every life insurance company doing business in this state shall return with, and as part of any policy issued by it, to any person taking such policy, a complete copy of each application or other document held by it which is intended in any manner to affect the force or validity of such policy. A company which neglects to do so is estopped from denying the truth of any such application or other document, so long as it is in default for such copy. In case such company neglects for thirty days after demand made therefor, to furnish such copies, it is forever barred from setting up as a defense to any suit on the policy, any incorrectness or want of truth of such application or other document."

The Ohio Supreme Court, in construing the language of R. C. 3911.04, has held that life insurance companies do-

ing business in the state shall return with, and as part of, any policy issued by it to any person a full and complete copy of each application or other document held by it related to the issuance of such insurance. This, the court pointed out, meant that such applications must be returned with the policy to the insured during his lifetime. *Acacia Mut. Life Ins. Co.* v. *Weissman* (1955), 164 Ohio St. 82, and *Pannunzio* v. *Monumental Life Ins. Co.* (1958), 168 Ohio St. 95.

The defendant insurance company argues, however, that such aforestated cases dealt with insurance companies issuing individual life policies and not with group policies and that, accordingly, R. C. 3911.04 was applicable to those instances, whereas R. C. Chapter 3917 would be the appropriate applicable chapter of law to the type of group policy concerned with here.

The only other appellate case in Ohio that we find which would give us any assistance on the question of the applicability of Chapter 3917 versus the applicability of Chapter 3911 is the case of *Woelfling* v. *Great-West Life Assurance Co.* (1972), 30 Ohio App. 2d 211. The court there was also dealing with a group life insurance policy.

In *Woelfling,* we find the following, at page 218:

"* * * Moreover, under Ohio law, the defense of fraudulent misrepresentation would be available to the insurer despite the fact that a copy of the application was not attached to the certificate or the group policy in that the sanction provided in R. C. 3911.04 is not applicable to group insurance controlled by R. C. 3917.06."

The statement of the court in *Woelfling* that R. C. 3911.04 is not applicable to group policies is dictum. The court specifically held that Illinois law rather than Ohio law controlled, stating at page 218:

"* * *However, under the law of Illinois, which is dispositive of this issue, the failure of the insurance company to send a copy of the application to the insured or his beneficiary does not preclude the company from defending on the grounds of misrepresentation. * * *"

The defendant's argument as to the inapplicability of such section to group life policies takes the form that such

policies, and the relationship of the parties, and the surrounding circumstances of obtaining such type of policy, presents an entirely different circumstance than is presented by an ordinary life policy. It, in this regard, argues that the real purpose of such law is to prevent an overzealous and eager insurance agent from falsifying answers concerning the health of the applicant for insurance, without the knowledge of the latter, for the purpose of assuring the acceptance of the application by the insurer.

The defendant argues further that the protection provided by the section in question is not necessary in the instance of group life insurance, in that there is an absence of this personal relationship between the applicant and an agent of the insuring company. Conversely, defendant argues, the contract, in the main, is between the employer (the National Guard in this instance) and the insurance agent.

We are impressed with this argument. However, not only does the specific wording of the statute appear to direct us otherwise, but the cases and comments in this general area also seem to apply the contrary construction.

R. C. 3911.04 is specifically directed at "every life insurance company doing business in this state." The statute applies to "any policy issued by it." The statute makes no exception for group policies. On the contrary, R. C. 3917.01 specifically provides that group life insurance is *a form of life insurance.* R. C. 3917.06 specifically provides in part:

"The group life insurance policy together with any application in connection therewith shall be available for inspection during regular business hours at the office of the policyholder where such policy is on file, by any beneficiary thereunder or by an authorized representative of such beneficiary."

R. C. 3917.06 must be read *in pari materia* with R. C. 3911.04. Therefore, where a group policy is involved, the life insurance company is not required to send a copy of his application to each certificateholder, but, rather, is required to send a copy of every such application to the policyholder to be attached to the policy. In this case, the policyholder is the Ohio National Guard Association. R. C. 3917.01(B)(10) and 3917.03.

The evidence indicates that the application in question was not attached to the policy as required by R. C. 3911.-04 and 3917.06. Since R. C. 3911.04 provides that "a company which neglects to do so is estopped from denying the truth of any such application or other document, so long as it is in default for such copy," defendant was precluded from denying the truth of the Perkins application.

If any contrary procedure is to be applied as between the insurer and the insured, as such procedure would be applicable to group life insurance policies, then such change must come by way of a legislative amendment to these sections of law.

As to any requirement of the delivery of the application for issuance to the insured during his lifetime, we must look to the language of the insurance contract relating to the incontestability by the insurance company where there has not been a delivery of such application.

The wording of the incontestability clause applicable to this discussion is as follows:

"No statement made by a Certificateholder relating to his insurability will be used in any contest unless (a) it is contained in a written application signed by him, and (b) a copy of the application has been furnished to him or to his beneficiary."

First, it must be noted that the language of such incontestability clause does not require the insuring company to deliver a copy of the application for such insurance to the insured at any given time. There is no language that such application will be delivered to the insured during his lifetime.

Further, such language specifically authorizes the insurance company to deliver a copy of the application, either to the insured or to his beneficiary. Such language could reasonably mean that the insuring company could provide a copy of such application during his lifetime or, in the alternative, upon request so to do, to provide the beneficiary of the insured a copy of the application.

It must further be pointed out that the language of the incontestability clause provides that no statement made by the insured relating to his insurability will be used in any contest unless such statement was contained within the

written application and copy provided as referred to. Therefore, it would seem that what is contemplated by such language is that the company must furnish a copy of the application where such would be needed in reference to a contest of any such claim under the insurance policy.

It seems that the reasonable intent of such language is that if the company is going to claim fraud within the application for such insurance, they would be required to make available to the interested party the document by which the company claims fraud had been committed.

We do not believe that a fair interpretation of the language in the incontestability clause would require the insuring company to provide a copy of the application for insurance, either to the insured or to the insured's beneficiary during the insured's lifetime or be estopped from claiming fraud on the application. Such language reasonably means that the insuring company must submit a copy of such application to the interested party in any contest upon such insurance policy

We therefore hold that the trial court erred in its construction of the language of the incontestability clause. However, this error is not prejudicial. The trial court correctly did not permit the defendant to introduce the application submitted by the deceased insured because of defendant's noncompliance with R. C. 3911.04, which precludes defendant from denying the truth of the application in case of such noncompliance.

Accordingly, the assignment of error presented by plaintiff upon her cross-appeal is sustained, and that of defendant upon its appeal is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

STRAUSBAUGH, HOLMES and WHITESIDE, JJ., concur.