PERKINS, APPELLEE, *v.* NATIONWIDE LIFE INS. CO., APPELLANT.

(No. 74-257—Decided March 19, 1975.)

*Messrs. Thompson, Swope, Burns & Biswas* and *Mr. Richard F. Swope,* for appellee.

*Messrs. Crabbe, Brown, Jones Potts & Schmidt* and *Mr. Wilbur W. Jones* and *Mr. Glenn B. Redick,* for appellant.

HERBERT, J. The principal question presented herein is whether R. C. 3911.04 precludes appellant from introducing evidence which disputes the truth of statements made by appellee's decedent in his application for the supplemental life insurance benefits.

R. C. 3911.04 provides, in pertinent part:

"Every life insurance company doing business in this state shall return with, and as part of any policy issued by it, to any person taking such policy, a complete copy of each application or other document held by it which is intended in any manner to affect the force or validity of such policy. A company which neglects to do so is estopped from denying the truth of any such application or other document, so long as it is in default for such copy."[1]

Appellant argues that the General Assembly did not intend that R. C. 3911.04 should control group life insurance policies. In support of its position, appellant points to the last paragraph of R. C. 3917.06, which states: "Except as provided in [S]ections 3917.01 to 3917.06, inclusive, of the Revised Code, no contract of life insurance shall be made covering a group in this state." Appellant contends that this language requires us to hold that only R. C. Chapter 3917 has any application to group, as opposed to individual, life insurance policies in this state, thereby rendering R. C. 3911.04 inapplicable to the facts at bar. We disagree. Although it is obvious that the above-quoted language of R. C. 3917.06 places control over group

---

[1] An insurer that neglects to return such application during the lifetime of the insured has failed to comply with this section. *Acacia Mutual Life Ins. Co.* v. *Weissman* (1955), 164 Ohio St. 82, 128 N. E. 2d 34; *Pannunzio* v. *Monumental Life Ins. Co.* (1958), 168 Ohio St. 95, 151 N. E. 2d 545.

life insurance policies within R. C. Chapter 3917, it is equally apparent that such language refers to the contract itself and was not meant to exclude all other statutes governing matters which may concern the area of group insurance.[2]

Appellant also relies upon *Woelfling* v. *Great-West Life Assurance Co.* (1972), 30 Ohio App. 2d 211, 218, 285 N. E. 2d 61, wherein the opinion states that the "sanction provided in R. C. 3911.04 is not applicable to group insurance * * *." However, that court did not consider this observation of sufficient pertinence to the case to place it in the syllabus. We do not consider *Woelfling* persuasive upon the issue now at hand.

R. C. 3911.04 is specifically directed at "[e]very life insurance company doing business in this state," and makes no exception for group policies. In the case at bar, appellant failed to provide a copy of the application to the policyholder, the Ohio National Guard,[3] to be available for inspection with the policy as required by R. C. 3917.06.[4] In determining whether that section is to be read *in pari materia* with R. C. 3911.04, it is significant that the two statutes do not conflict; they are consistent with the legislative policy of giving the insured, or a beneficiary, the opportunity to see and correct any inaccurate statements in the application. Furthermore, the fact that G. C. 9389

[2]For example, R. C. 3911.19 (prohibiting discrimination among premiums charged to individuals of the same class) and R. C. 3911.23 (prohibiting misrepresentation of terms in a policy) are not contained in R. C. Chapter 3917. However, we are unconvinced that the General Assembly intended to deny those protections to holders of group life policies.

[3]R. C. 3917.03 provides that "[i]n every group policy issued by a domestic life insurance company the employer * * * is the policyholder for all purposes under [S]ections 3917.01 and 3917.06 of the Revised Code. * * *"

[4]R. C. 3917.06, in pertinent part, states: "* * * The group life insurance policy together with any application in connection therewith shall be available for inspection during regular business hours at the office of the policyholder where such policy is on file, by any beneficiary thereunder or by an authorized representative of such beneficiary."

(the predecessor of R. C. 3911.04) was enacted at a time when group life policies were not specifically referred to by statute in Ohio does not prevent the statutes from being read together. As stated in the second paragraph of the syllabus in *State, ex rel. Pratt*, v. *Weygandt* (1956), 164 Ohio St. 463, 132 N. E. 2d 191, "[s]tatutes relating to the same matter or subject, although passed at different times and making no reference to each other, are *in pari materia* and should be read together to ascertain and effectuate if possible the legislative intent." Additionally, it should not be overlooked that the broad language in R. C. 3911.04, referring to "[e]very life insurance company doing business in this state," was not changed when Chapter 3917 was enacted.

It is our conclusion that where a company writes a group life insurance policy, it must, before the death of the insured, provide a copy of any application in connection therewith to the policyholder-employer, or be prevented by R. C. 3911.04 from contesting the truth of statements contained in the application.

We are acutely aware of the apparent misstatements made by the instant decedent in his application to appellant for group life insurance. However, the General Assembly undoubtedly considered such an eventuality when it enacted the statutes now before us.[5] In balancing the oner-

---

[5]It is the opinion of the minority that where the trial court finds that fraud has been committed in the making of an application, the insurer is not prevented by R. C. 3911.04 from defending upon the basis of such fraud. Were such a comfortable solution feasible, it could represent an attractive result for this case. However, as a matter of practical procedure, the minority would render meaningless the legislative effort represented by R. C. 3911.04 and 3917.06.

Under the position taken by the minority, the trial court would be required to receive evidence to determine the truthfulness of an application, before the court could decide whether the estoppel prevailed. We fail to see what would be accomplished by a statutory bar to a particular defense, if the court was required to take full evidence upon that very defense before deciding to invoke or reject the bar.

The General Assembly has unequivocally stated that these application copies must be made available to insureds. To enforce compliance

ousness of possible fraud by an insured or an insurer, that body made a policy decision in favor of the former. Such policy decisions can result in so-called hard cases, but judicial wincing is not new and does not ordinarly justify the disregarding of clear legislative pronouncement.

The judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'NEILL, C. J., CELEBREZZE and W. BROWN, JJ., concur. CORRIGAN, STERN and P. BROWN, JJ., dissent.

STERN, J., dissenting. The majority concludes that the General Assembly has made a policy decision favoring the onerousness of possible fraud by an insured to that of possible fraud by an insurer. I disagree with the implication of the majority that the courts must ratify a small miserable fraud in order to deter some greater fraud, and I find no clear legislative pronouncement which suggests any such ratification of an insured's fraud.

An insurance policy is but a form of contract. The right of an injured party to withdraw from a contract which was fraudulently induced is well established, and as a matter of public policy this right may not be bargained away. 2 Restatement of Contracts, 1079, Section 573. Certainly, if the law will not permit waiver of the defense of fraud in a free bargain, it should be most reluctant to deprive a

with that requirement, a stern legislative sanction was fashioned. While the minority, because of the difficult facts in this case, would eviscerate that sanction on other than constitutional grounds, the majority is constrained to uphold the statutes as a proper exercise of the legislative prerogative.

Our past cases, and common sense, tell us that once an insured has died, the estoppel-triggering default enunciated in R. C. 3911.04 cannot be cured. The minority would permit an insurer to violate the statute, wait until the insured has died, and then introduce evidence of misstatements in the application. This is precisely the undesirable and inequitable situation sought to be foreclosed by the General Assembly through its enactment of R. C. 3911.04 and R. C. 3917.06.

party of that defense under a statute the purpose of which is to prevent fraud.

R. C. 3911.04 and similar statutes in other states were enacted to prevent fraud by an insurance company or its agent, and to protect also against errors and misunderstandings which might arise from the manner in which insurance is sold. Many applications for insurance—probably a majority—are actually filled out by an insurance agent, who forwards these applications to the insurer. Unless the insured is provided with a copy of this application, he is vulnerable to an agent's fraud in falsely filling out the application, and is vulnerable as well to simple errors which might appear on an application through oversight or mistake, and which might affect the insured's rights under the policy. Thus, Ohio is one of many states, which by statute requires an insurer to give to the policyholder copies of application forms and other documents which can affect an insured's rights under his policy. Failure to deliver these documents is generally held to bar the insurer from raising the defense of misrepresentation, waiver of rights, or of other defenses derived from the language of the documents. Thus, if the insurance company or its agent errs or seeks to defraud an insured, that insured is protected. He will either receive copies of the documents themselves, or will be protected by the doctrine of estoppel from their use against him.

Although there is conflicting authority, the majority of the cases have not extended this protection of the insured so far as to provide the insured a shield for fraud. 43 American Jurisprudence 2d 358, Section 297. In some states, fraud is, by statute, excluded from the protection given to innocent misrepresentation in an application; in others, the courts have construed statutory provisions to be inapplicable to a defense of fraudulent inducement in the issuance of a policy. Annotation, 93 A. L. R. 374, 377.

Contrary to the conclusion of the majority, I do not find that Ohio's statutes permit the setting up of a fraud by an insured, solely for failure to deliver a copy of an

application to the policyholder. A comparison of the language of R. C. 3911.04 with that of R. C. 3911.03 and 3911.-05 makes this clear. In R. C. 3911.03, the General Assembly has, in precise language, chosen to bar a defense of fraud where the insurance company has failed to furnish copies of applications and other documents upon demand by the policyholder.

R. C. 3911.03 provides in part:

"If * * * [an insurance company] neglects or fails for thirty days from the time of * * * demand to furnish to [a policyholder] a copy of all papers mentioned in this section, it thereafter is forever barred from setting up, by way of defense to a suit on the policy of insurance, any error or incorrectness, *or fraud or misrepresentation of the person making such papers,* or any mistake therein." (Emphasis added.)

In R. C. 3911.05, the General Assembly has similarly chosen to hold as void applications and other documents taken "in cipher or by character of any sort other than ordinary written language."

In the case of applications not returned to the policyholder, the General Assembly has taken a different path; it has not chosen to make such documents so conclusive as to forever bar the defense of fraud, as in R. C. 3911.03, nor has it held such documents to be "void as against any person claiming under a policy of insurance issued thereon," as in R. C. 3911.05. Rather, the General Assembly adopted, in R. C. 3911.04, the equitable doctrine of estoppel:

"* * * A company which neglects to [return a copy of each application] is *estopped* from denying the truth of any such application or other document, so long as it is in default for such copy. * * *" (Emphasis added.)

It is fundamental that an equitable defense will not be allowed to set up a fraud, and I find in the statutory language no suggestion that the courts should do other than apply the same principles of equity to estoppel as to any other equitable defense. I do not find that this statutory language compels the courts to ignore the facts in a case and

to allow a fraud to be set up under the protection of the doctrine of estoppel.

In his application for the $25,000 in supplemental benefits, Mr. Perkins stated that his only previous health difficulty was "appendicitis" in 1942. The application was dated August 20, 1970 by Perkins, and the supplemental insurance became effective as of December 1, 1970. Perkins died on July 22, 1971, of stomach cancer. The insurance company claims that Perkins in fact was suffering, and had suffered for some time, from diabetes, hemorrhoids, digestive problems, and a malignancy in his stomach. The stomach cancer was diagnosed, in early September 1970, after a biopsy was performed, less than two weeks after the date of the insurance application. Perkins, in his application for insurance, answered "No" to questions of whether he had ever been hospitalized, consulted with, or treated by a physician for "stomach or intestinal disorders," or for any other disease or disorder.

This court cannot undertake to make any finding that those answers were wilfully false, fraudulently made, material, or that they induced the company to issue the policy, within the meaning of the statutory definition of fraudulent inducement in R. C. 3911.06. I do conclude, however, that this sequence of events raises a question of fraud, sufficient to be decided by a trier of fact rather than be barred by an equitable rule of procedure.

I would reverse the judgment of the Court of Appeals and remand the cause to the trial court, with instructions to admit the application as evidence of fraudulent inducement under R. C. 3911.06.

CORRIGAN and P. BROWN, JJ., concur in the foregoing dissenting opinion.

PAUL W. BROWN, J., dissenting. I dissent for the reasons stated by Justice Stern in his dissenting opinion.

R. C. 3911.04 requires a life insurance company to furnish an insured with a copy of his application for life in-

surance. The purpose of the statute, as the majority notes, is to give an insured ''the opportunity to see and correct any inaccurate statements in the application.'' Surely, the General Assembly could not have contemplated shielding an insured from the consequences of his own fraudulent misrepresentations.

Such an interpretation is consistent with Judge Zimmerman's opinion in *Pannunzio* v. *Monumental Life Ins. Co.* (1958), 168 Ohio St. 95. There, he conditioned the allowance of recovery on a policy to cases in which there is an ''absence of proof that the applicant for insurance knew or should have known that the insurer was being deceived.''

Nor am I convinced that R. C. 3911.04 applies to group life insurance policies. As indicated *supra*, that section requires that copies of applications be furnished to policyholders. In the present case, the section required that copies of individual applications be furnished to the Ohio National Guard. In such a situation, it is unlikely an individual insured would ever *see*, much less receive, a copy of his application.

Further, in the typical supplemental benefits context, no agent of the insurance company is involved. Rather, each individual applicant fills out and signs the appropriate application on his own. The purpose of R. C. 3911.04, to protect an insured from an agent's fraud or error, is in no way fulfilled.

This case should be reversed, and remanded to the trial court with instructions to allow the introduction of the application, and the admission of any evidence material to the issue of fraudulent inducement by the insured.

CORRIGAN, J., concurs in the foregoing dissenting opinion.