Continental Assurance Company, Appellee, v. William McCarty and Ruth Heaton, Administrator and Administratrix of Estate of Frances Andell, Deceased, Appellants.

Gen. No. 9,189.

Opinion filed October 19, 1939.

R. M. Riggs, of Winchester, and A. W. Schimmel, of Pittsfield, for appellants.

Bellatti, Samuell & Arnold, of Jacksonville, for appellee.

Mr. Presiding Justice Riess delivered the opinion of the court.

Defendants appellants, William McCarty and Ruth Heaton, as administrators of the estate of Frances Andell, deceased, have appealed from a decree in favor of the plaintiff appellee, Continental Assurance Company, a corporation, entered by the circuit court of Scott county, Illinois, canceling an insurance policy in the sum of $1,000 issued on July 1, 1936, to said Frances Andell, who departed this life on September 28, 1937, in which policy the estate of said assured was named as beneficiary. The policy in question contained the usual two years incontestable clause, but the death of the assured and suit on the policy occurred within the two-year period.

The complaint alleges the issuance of the policy in question in reliance upon certain false representations made by Frances Andell in a written application for the insurance policy known by the applicant to be false and which were material to the risk and were relied upon and believed by the company to be true and to have induced the issuance of the policy. The complaint specifically alleges that by question 15 of the application, the decedent was asked in writing the following questions: "Have you ever had any ailment, disease, injury or operation? Name ailments—dates—duration—results—doctors," and that deceased answered the above question in writing as follows: "Common Colds—Appendectomy, 1925—Normal duration—full recovery—Dr. J. W. Eckman."

It was further alleged in the complaint that the decedent at the time of making application was suffering

from chronic nephritis with hypertension, and had been suffering from that ailment for three years, and that she had been treated by three physicians, viz.: Dr. J. W. Eckman and by Dr. F. G. Norbury and Dr. F. A. Norris of Jacksonville, Illinois, in October, 1935, and March, 1936, respectively; that said matters were material to the risk, which was greatly increased by reason of the fact that the said Frances Andell was suffering from said disease; that appellee would not have issued the policy if it had known that she was suffering from said disease or had been attended by said physicians, and that knowledge of the falsity of said representation and of the true state of facts did not come to appellee until after the death of assured.

Defendants appellants' answer denied that she had an alleged ailment or that she had any knowledge thereof or that she was attended by any other doctor than J. W. Eckman; averred that any examination by said physicians was for diagnostic purposes, and filed therewith a counterclaim asking affirmative relief in the way of judgment on the policy, to which counterclaim appellee filed its answer.

The cause was referred to the master in chancery, who found the issues for the plaintiff appellee; that the misrepresentations alleged in the complaint were made by the assured in her application; that they were material to and increased the risk by reason of the alleged disease from which she was found to be suffering; that said representations were false and known in part by applicant to be false and were relied upon by the company without knowledge of their falsity, and the decree was recommended and granted by the court canceling the above policy and enjoining defendants from suing thereon and finding the amount of $41.67, which had been paid in premiums by the assured and duly tendered to the administrators, to be due to the defendants appellants. The master's report was duly approved by the court and a decree entered reciting

proof of the various allegations of the complaint and granting the relief prayed, from which decree this appeal was taken.

In support of the allegations of the complaint, five witnesses were called, including the three physicians hereinabove named; the insurance agent, P. H. Huffstetler, who solicited and wrote the application for the insurance policy, and one C. E. Carlson, an underwriter who passed upon the application and approved the issuance of the policy by the company.

It appears from the evidence that Frances Andell was employed as an attendant at the Jacksonville State Hospital and was aged 37 years in June, 1936, when the application for the policy in question was signed by her; that prior thereto she had consulted Dr. J. W. Eckman of Winchester, Illinois, concerning her health and was taken by him to a hospital in Jacksonville, Illinois, on October 9, 1935, where she was examined by Drs. Norbury and Norris of that city. She then complained of having suffered head pains from four to six weeks, loss of weight during that time of eight or ten pounds and of constipation, frequent urination and nervousness. Examination by the physicians while she remained in the hospital resulted in their diagnosis that she was suffering from chronic nephritis with hypertension, which means a chronic kidney disorder associated with high blood pressure.

Dr. Norbury testified to finding a full thyroid, white deposits along the arteries of the eyes indicating change in nerve cells; evidence of albumen and casts in the urine, and her blood pressure, diastolic 130 and systolic 214, but did not recall whether he advised her of his findings, which were communicated to Dr. Eckman. He again saw her in April, 1937, and from diagnosis did not consider her chances good for recovery and was of the opinion that her condition would continue until the time of her death.

Dr. Norris testified that he saw her at the hospital on March 10, 1936, October 28, 1936, and April 18, 1937, in association with Dr. Eckman; that on March 10, 1936, she had told him of a previous attack of scarlet fever, of her employment at the State hospital and of her complaints of head pains, extreme nervousness and frequency of urination; that he found her blood pressure to be diastolic 110, systolic 230, hyalin and granular casts in the urine, kidney function 27 per cent, which was normally 65 to 100 per cent, indicating kidney damage; prognosis bad, indicating the beginning of a terminal illness from which she could not recover, and other symptoms and conditions to which he testified, and that in October, 1936, and April, 1937, he examined her again and his findings were similar.

Dr. Eckman testified that he had attended her for an appendectomy operation in 1925 by Dr. Duncan and that no salpingectomy operation was performed at that time; that thereafter he attended her on some occasions for colds; that in March or April, 1936, she complained of headache and extreme nervousness, but did not stop her work at the State hospital; that he referred her to either Dr. Norbury or Dr. Norris, whom she consulted; that she went to the hospital and remained there for three days in the fall of 1935; that he treated her but did not tell her the nature of her illness; that her blood pressure appeared on the hospital records and that her ailments continued and gradually grew worse, and that it was chronic nephritis with hypertension that caused her death; that nobody treated her from March to April, 1936, and thence forward until the date of her death except Dr. Norbury, Dr. Norris and himself; that she did not disclose making application for insurance to him and that her general reputation for truth and honesty was good in that community.

The agent, Huffstetler of Springfield, Illinois, who took the application, stated that at the time he took the application, he and applicant sat in his car in the rear of the hospital buildings; that he questioned her and truthfully transcribed her answer to question 15 as she gave it to him; that he believed her answer to be true and had no knowledge of the fact that she had suffered from chronic nephritis with hypertension nor that Dr. Norbury or Dr. Norris of Jacksonville had diagnosed her case or treated her, nor that Dr. Eckman had attended her for high blood pressure or the ailments referred to; that so far as he knew she was in good health and he believed her to be in good health.

Witness C. E. Carlson testified that he was the underwriter and passed upon applications for insurance, selected risks and was familiar with the elements materially affecting insurance risks; that some applications were written by the company without medical examination, in which case the applications and answers therein largely determined whether the insurance should be granted; that he passed upon her application, relied upon the truth of the answers and the same was accepted and the policy issued on the basis of the answers; that therefrom it appeared that the only ailments from which she had suffered were those set forth in answer to question 15; that in passing upon the application, he had no knowledge that the applicant had suffered from chronic nephritis with hypertension, which would be material to the risk in issuing a policy according to underwriting practice and would cause its rejection; that if he had known of her suffering from chronic nephritis with hypertension during the previous year, the application would not have been approved and the company would not have issued the policy; that he relied upon the statement that she had consulted or been treated only by Dr. Eckman, and did not know that Drs. Norbury and Norris had examined

or treated her, or that she had suffered from any disease except appendicitis and common colds in the past; that prior to her death, his department knew nothing of her previous and continuing illness and communicated with no physician in relation thereto prior to the time of her death.

From the evidence we are constrained to hold that the findings and conclusions of the master, as approved by the trial court and recited in the decree, fully justified the court in holding that the material allegations of the complaint had been proven and that the plaintiff was entitled to the relief which was granted in the decree.

It is certain that the deceased knew of being taken to the hospital and remaining there under care of Drs. Norbury and Norris for three days and on one subsequent occasion prior to making application for the insurance, which facts coupled with the recital of various symptoms to the physicians and their subsequent treatment and examinations by the three physicians were facts and circumstances tending to prove that she was not unaware of existing ailments undisclosed by her answers in the application. That she was suffering from chronic nephritis with hypertension for a period of three years prior to the time of her death clearly appears from the record, and it further appears that the company had no knowledge of the terminal illness, from which she was suffering at the time the application was written and which resulted in her death, nor of her treatment therefor by any physician.

The lower court properly found that the representations made in answer to question 15 were false and were material to the risk, upon which the company relied and was induced to issue the insurance policy. Aside from the evidence tending to prove that the material misrepresentations were made knowingly, that fact is not controlling under the evidence herein.

In an equitable action for cancellation of an insurance policy upon the ground that misrepresentations had been made as to facts material to the risk, it is not essential that the applicant should have wilfully made such misrepresentations knowing them to be false, but they will avoid the policy if they are, in fact, false and material to the risk and the company relied thereon, even though made through mistake or in good faith. *Western & Southern Life Ins. Co. v. Tomasun,* 358 Ill. 496, 193 N. E. 451; *Tanner v. Prudential Ins. Co.,* 283 Ill. App. 210.

Where an accident and health insurance policy was issued without medical examination, reliance upon the truth of answers to questions in the application, the statements by insured in answer to questions that the applicant was not suffering from disease or bodily impairment or received medical or surgical advice or treatment when the applicant in fact had been treated by several physicians and suffered from an ailment resulting in subsequent death, it was held by this court to have been misrepresentations of facts material to the risk which resulted in rendering the policy void. *Wasem v. Metropolitan Life Ins. Co.,* 269 Ill. App. 275. The same principle is adhered to in the recent case of *Bronarczyk v. Prudential Ins. Co.,* 298 Ill. App. 621 (Abst.), 18 N. E. (2d) 398.

We deem the decree of the trial court to have been in accord with both the law and the facts in the instant case. Finding no reversible error in the record, the decree of the circuit court of Scott county will be affirmed.

*Decree affirmed.*