HENRY HATCH, Plaintiff-Appellant, *v.* WOODMEN ACCIDENT & LIFE CO., Defendant-Appellee.

Second District    No. 79-445

Opinion filed September 3, 1980.

Donald W. Ford and Gerald M. Sheridan, Jr., both of Wheaton, for appellant.

R. Terence Kalina, of Rathje, Woodward, Dyer & Burt, of Wheaton, for appellee.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Henry Hatch, the beneficiary under life insurance policies issued by the defendant insurer, sued to recover the proceeds. The trial court granted summary judgment for the insurer, voiding the policies for alleged material misrepresentations in the applications for insurance. The plaintiff appeals.

The policies in question included a group insurance policy issued on February 9, 1973, in the sum of $7,500 and a decreasing term life insurance policy issued March 1, 1973, for $10,000 to Edwin Hatch, the son of the beneficiary who was then 36 years old. Edwin Hatch died on August 8, 1974, before the policies became incontestable. The coroner's certificate stated that the cause of death was "acute ethanolic intoxication." In its answer to the suit filed by the plaintiff, the insurer alleged as an affirmative defense that the coverage was void under section 154 of the Insurance Code (Ill. Rev. Stat. 1977, ch. 73, par. 766) because the insured misrepresented the state of his health by failing to disclose hospital and medical treatment with the intent to deceive and/or that the misrepresentations materially affected acceptance of the risk. The parties submitted evi-

dence to the court by stipulation. The evidence included the applications of insurance, the deposition of the insurance agent who took the applications, the deposition of Dr. Dunphy, the coroner's report and the underwriter's manual in force at the time of the applications.

The applications for the policies signed in February of 1973 asked various questions pertaining to the insured's medical history. Question 8 of the February 8 application asked whether the applicant was "to the best of [his] knowledge and belief now in good health and free from physical impairment or deformity?" The answer was "Yes." Question 9 asked if the applicant or his dependents "had any illnesses or accidents or consulted any physicians or other practitioners within the past three years?" The answer was "Yes" and the required explanation stated: "Edwin—Sprained Ankle, Dec. complete Recovery—Out Paitent [*sic*] Treatment only. Eileen—for Pregnancy—Normal Delivery." Question 10 asked for "any heart trouble" or "any serious illness." The answer was "No." Question 5 of the February 20 application asked "so far as you know and believe are you in good health and free from impairment?" The answer was "Yes." Question 6 asked if the applicant had ever had, been treated for, or sought advice for "disease of the stomach, intestines, liver or gall bladder; disease of brain or nervous system; or other disease, injury or operation." The "No" answer was checked. Question 8a asked whether the applicant had "consulted or been treated or examined by a physician or practitioner in the past five years?" The answer was "Yes." Question 10 asked if the applicant had a family physician. The answer was "No." Question 12 asked for "Full Details, Questions 5 to 11; also 15 and 16. AILMENTS, DATES, PHYSICIANS' NAMES AND ADDRESSES, OTHER COMPANIES, ETC." The response was: "Sprained Ankle. Dec. 1972. Out Paitent [*sic*] Treatment only. Complete Recovery."

The deposition of Dr. James V. Dunphy shows that, in fact, the insured was treated by Dr. Dunphy 50 times from March 12, 1966, to July 24, 1974. The doctor stated that he saw the insured on a regular basis after the initial meeting in March of 1966; that the patient was requested to come back and came practically monthly for "quite a while"; that the 50 visits did not count the time he may have been in the hospital; that he was admitted to Edward Hospital in 1966 when he was hospitalized for a liver biopsy; that this was after the doctor had noted an enlargement of the liver by clinical examination; and that the results of the biopsy showed a fatty metamorphosis of the liver. The diagnosis was steatosis. The doctor also stated that the patient was admitted to Edward Hospital in September of 1967 when he complained of flushing, nervousness, perspiration, and had stated that the episodes were becoming more frequent. The insured was also admitted to the hospital in 1970 complaining of loss of appetite, 10-pound weight loss and a feeling of nervousness and panic.

After a series of tests in the hospital the doctor concluded in October of 1970 that the insured was suffering from "Beta Receptor Hypersensitivity." The insured was also admitted to the hospital again in February of 1971, experiencing palpitation and apprehension. At that time the insured was diagnosed as having some mild evidence of emphysema. The doctor saw the insured in his office on several occasions in March 1971. Dr. Dunphy treated the insured in March and April of 1973 for a respiratory infection. In answer to a question the doctor stated that he believed he functioned as the insured's family physician.

The trial judge specifically found that there was no intention by the decedent to deceive. However, the trial judge held that the failure to disclose the 1971 hospitalization was a misrepresentation which materially affected the risk.

■■ Initially, plaintiff contends that the issue of misrepresentation allegedly made in the applications for insurance may not be relied upon because they were not attached to the policies. Section 154 of the Insurance Code provides in substance that no misrepresentation made by an insured in negotiating for a policy of insurance may be relied upon unless stated in the policy or endorsement, "or in the written application therefor, of which a copy is attached to or endorsed on the policy, and made a part thereof." The section further provides that no misrepresentation shall avoid the policy "unless it shall have been made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company." (Ill. Rev. Stat. 1977, ch. 73, par. 766.) Defendant responds that the issue was not raised in the trial court and thus has been waived. We agree. It is undisputed that the failure to attach the application to the pleadings was not questioned by the plaintiff in the trial court. The defendant alleged material misrepresentation in the application as an affirmative defense; and the applications were before the court by stipulation, with the agreement that the court should rule on the pleadings and the other matters presented to it. Under these circumstances we apply the usual rule that issues not raised in the trial court will not be considered on review. (See, *e.g.*, *Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 147; *Schoenhard v. Schoenhard* (1979), 74 Ill. App. 3d 296, 299.) The facts before us do not impel a relaxation of the rule of waiver, since plaintiff's failure to move to strike the affirmative defense and his participation in the presentation of the issues by the stipulation prejudiced defendant who otherwise could have presented evidence of attachment if the issue had been raised. (See *Hux v. Raben* (1967), 38 Ill. 2d 223, 225.) We also note that as to the group policy there is no requirement that the application must be attached. (*Hofeld v. Nationwide Life Insurance Co.* (1975), 59 Ill. 2d 522, 533-34.) We therefore consider the case on its merits.

We conclude that the trial judge properly found that the insured had

misrepresented his medical history in the applications and that the misrepresentations materially affected acceptance of the risk.

■■ ■ Section 154 of the Insurance Code is construed, as written, in the disjunctive; proof that a misrepresentation has been made which materially affects the acceptance of the risk or the hazard assumed by the company will avoid an insurance policy, even though the applicant acts through mistake or with good faith. (*Campbell v. Prudential Insurance Co. of America* (1958), 15 Ill. 2d 308, 313. See also *Stone v. Those Certain Underwriters at Lloyds* (1980), 81 Ill. App. 3d 333, 339.) Materiality is determined "by the question whether reasonably careful and intelligent men would have regarded the fact stated as substantially increasing the chances of the event insured against, so as to cause a rejection of the application or different conditions." (*Weinstein v. Metropolitan Life Insurance Co.* (1945), 389 Ill. 571, 577. See also *Logan v. Allstate Life Insurance Co.* (1974), 19 Ill. App. 3d 656, 659-60.) The fact that the insured does not die from the affliction with respect to which information has been withheld does not affect the materiality of the misrepresentation. (*Campbell v. Prudential Insurance Co. of America* (1945), 15 Ill. 2d 308, 313; *Weinstein v. Metropolitan Life Insurance Co.* (1945), 389 Ill. 571, 579.) Incomplete answers, or failure to disclose material information in response to a question in an application may constitute a material misrepresentation. *Stone v. Those Certain Underwriters at Lloyds* (1980), 81 Ill. App. 3d 333, 338; *Continental Assurance Co. v. McCarty* (1939), 302 Ill. App. 10, 16; *Unger v. Metropolitan Life Insurance Co.* (1968), 103 Ill. App. 2d 150, 156.

■■ Here, question 9 of the February 8 application asked in plain and simple terms if the applicant had any illnesses or accidents or had consulted any physicians or other practitioners within the past three years; question 8a of the February 20 application asked if the applicant had consulted or had been treated or examined by a physician or practitioner within the past five years. The insured's visits to Dr. Dunphy during the five-year period prior to the date of the application should have been disclosed in response to these two questions. His statements in response to those two questions that he was treated for a sprained ankle in December of 1972 with complete recovery, without further explanation, were the equivalent of a direct assertion that the sprained ankle was the only medical problem of which he had been made aware in the past three to five years. By withholding this relevant information plaintiff prevented the defendant from appraising the risk on the basis of the facts as they existed. In *Continental Assurance Co. v. McCarty* (1939), 302 Ill. App. 10, in response to questions similar to those in issue here, the applicant disclosed treatment for colds and appendectomy but neglect-

ed to mention extensive treatment for other ailments. The court found that the incomplete answer constituted a material misrepresentation. (*McCarty*, at 16. See also *Cox v. Equitable Life Assurance Society* (1947), 333 Ill. App. 207, 212-13.) In *Unger v. Metropolitan Life Insurance Co.*, the applicant failed to disclose the fact that she had made several visits to a psychiatrist who diagnosed that she was suffering from a "psychoneurosis anxiety state." The court perceived the critical inquiry to be whether "the interrogatories in the application form were sufficiently specific to require plaintiff to disclose information concerning her psychiatric treatment." (103 Ill. App. 2d 150, 156.) Although concluding that a psychoneurosis anxiety state was not a mental or nervous disorder so as to require disclosure of treatment, the court found that the visits to the psychiatrist should have been disclosed in response to a question that asked in plain, simple and unambiguous terms if the applicant had within five years any disease, ailments, or injuries not revealed elsewhere in the application for which treatment, examination or advice was received from a physician or other practitioner. The court concluded that the withholding of this information prevented the insurer from appraising the risk on the basis of the facts as they existed, thus avoiding the policy. In *Stone*, the court held that in response to a question about whether there was any material fact within the applicant's knowledge regarding the proposal of insurance which should be submitted to the insurers for consideration, the failure to disclose that a broker had sold the art objects insured to the plaintiff for $19,800 and contemporaneously valued them at $275,800 voided the policy, as a matter of law. 81 Ill. App. 3d 333, 339.

Plaintiff's reliance on *Boyles v. Freeman* (1974), 21 Ill. App. 3d 535, is misplaced. In *Boyles*, the agent wrote down a firm answer on the application after plaintiff had given an equivocal response. Here, there is no suggestion that plaintiff's decedent informed defendant's agent that the details of the treatment were incomplete or that he could not remember all the treatments he had received in the past three or five years. Further, the questions did not call for a subjective determination but simply called for objective facts which the insured clearly failed to disclose and which materially affected the risk.

The judgment is affirmed.

Affirmed.

LINDBERG and NASH, JJ., concur.