**Mike GARDE, a/k/a Michael Garde, and James Garde, Plaintiffs–Appellants,**

v.

**INTER–OCEAN INSURANCE COMPANY, a foreign corporation, Defendant–Appellee.**

**No. 87–1396.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 3, 1987.

Decided March 15, 1988.

Rick Verticchio, Verticchio & Verticchio, Gillespie, Ill., for plaintiffs-appellants.

Lynn D. Dowd, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for defendant-appellee.

Before BAUER, Chief Judge, RIPPLE, Circuit Judge, and WILL, Senior District Judge.*

WILL, Senior District Judge.

### The Facts

The plaintiffs are the named beneficiaries in a $100,000 life insurance policy application on the life of Joseph Garde, a resident of Jacksonville, Illinois. The defendant, Inter–Ocean Insurance Company ("IOI"), did not issue a policy to Garde but its agent gave him a conditional receipt. Garde's application was made on February 2, 1983 following discussions with James Harold Long, an IOI agent.

Garde died on February 25, 1983 by drowning on his farm which was ruled accidental. On or about March 22, 1983, IOI began receiving reports that within six months prior to his death, Garde had obtained or applied for some 20 other life insurance policies totalling in excess of $1.5 million from at least 17 other companies. In addition, IOI's investigation revealed that Garde had significant financial difficulties at the time he applied for the insurance. Following receipt of this information, IOI denied coverage and returned the previously tendered binder deposit of $200.20.

The plaintiffs filed suit to collect the proceeds and IOI filed a motion for summary judgment, based on Garde's alleged material misrepresentation concerning "existing" and "applied for" insurance, in violation of the terms of the conditional receipt. The district court, based on the magistrate's recommendation, originally denied the motion but granted IOI's renewed motion for summary judgment after the Illinois Appellate Court for the Fourth District had found for insurers who had raised the same defenses as IOI did here. *Garde v. American Family Life Insurance Co.,* 147 Ill.App.3d 1034, 101 Ill.Dec. 110, 498 N.E.2d 292 (4th Dist. 1986) (*Garde I*) and *Garde v. Country Life Insurance Co.,* 147 Ill.App.3d 1023, 101 Ill.Dec. 120, 498 N.E.2d 302 (4th Dist.1986) (*Garde II*). Several insurers, on the other hand, paid the beneficiaries under the policies issued by them.

No dispute exists as to the substantial omissions in Garde's application.

The defendant also deemed the insurance policy void due to alleged undisclosed financial difficulties encountered by Garde near the time of his death. While the materiality of these alleged omission misrepresentations as to his financial condition might have been at issue at trial, it was not a basis for the district court's decision. For the reasons set forth below, we affirm.

### Discussion

Section 154 of the Illinois Insurance Code provides:

> No such misrepresentation or false warranty [in a written insurance application] shall defeat or avoid the policy unless it shall have been made with actual intent to deceive or *materially affects either the acceptance of the risk or the hazard assumed by the company.*

Ill.Rev.Stat.1983, ch. 73, ¶ 766 (emphasis added). Summary judgment is appropriate only where the materiality of the misrepresentations to the acceptance of the risk or the hazard assumed by the company is not reasonably in issue. *Hatch v. Woodmen Accident & Life Co.,* 88 Ill.App.3d 36, 42 Ill.Dec. 925, 409 N.E.2d 540, 543 (1980).

John Bryant, Assistant Secretary and Underwriting Manager for IOI testified by affidavit that his company would have denied Garde's application under its standards if aware of his other insurance or financial difficulties:

> That a routine investigation developed information that indicated question 13 on said application had been answered incorrectly;

> That had the correct information been divulged that life insurance in excess of $1,500,000 on the life of Joseph B. Garde had been applied for and/or issued within six months of the application for Inter–Ocean coverage as set forth in ..., in light of Joseph B. Garde's financial condition showing substantial debt and financial difficulty, Inter–Ocean Insurance

---

* The Honorable Hubert L. Will, Senior Judge of the United States District Court for the Northern District of Illinois, Eastern Division, is sitting by designation.

Company, in accordance with its underwriting standards in effect at the time of application would have declined to issue the policy;

That, even if Mr. Garde did not have substantial debt and financial difficulty, Inter–Ocean Insurance Company, in accordance with its underwriting standards in effect at the time of application would have declined to issue the policy had the correct information been divulged that life insurance in excess of $1,500,000 on the life of Joseph B. Garde had been applied for and/or issued during the 6 month period from August 16, 1982 to February 1, 1983, as set forth in....

That upon receipt of information necessary to properly underwrite the application, Inter–Ocean Company declined to issue said policy.

Bryant Affidavit.

Question 13 of the application asks: "Has Proposed Insured applied for life insurance within the past 6 months with any other company? (If "Yes", give details)." This was answered as follows: "$300,000 application with Illinois Mutual 10–9–82." It did not include any information with respect to the some 20 other policies totalling over $1,500,000 which Garde had taken out or applied for with other companies in the previous six months.

The plaintiffs claim that the decedent told James Long about his insurance policies with Mutual of Omaha Insurance Company ($8,000 and $28,000) but that Long did not list these on the application, rather he wrote down a $300,000 policy decedent had with Illinois Mutual Insurance Company, dated October, 1982. Long testified that the application was processed by him asking Garde questions and Long recording the answers. Long had personal knowledge of Garde's $300,000 Illinois Mutual Insurance Company policy because he was their agent at the time of its issuance. Apparently Long wrote down the $300,000 policy even though Garde did not proffer this information.

After the application had been completed, Garde gave Long a deposit of $200.20 and Long gave Garde a conditional receipt.

The receipt provides, among other things, that

[u]nless all conditions of this conditional receipt are met as stipulated, this conditional receipt shall operate as a receipt for a premium deposit only and no insurance shall be in effect until the full first premium is paid and a policy is actually delivered to and accepted by the applicant during the continued good health of the Proposed Insured and the applicant for Payor Benefits, if any.

■ The plaintiffs claim that Bryant's affidavit does not point to a specific company rule which directs IOI not to insure under these circumstances. A specific rule, however, need not be cited, a general policy is sufficient. *Rivota v. Fidelity & Guaranty Life Insurance Co.*, 497 F.2d 1225, 1230 (7th Cir.1974) (an insurer "may withhold coverage under [a] conditional receipt only if [the plaintiff], as of the relevant date, was not insurable and acceptable under the rules and practices of the Company as a standard risk for the policy.") The phrase "rule and practices of the company," the court said, was intended to "include a practice of case by case determination in situations involving unusual risk factors." The insurer need not "point to an applicable written rule contained in an underwriting manual." *Id.* at 1230 n. 10.

Bryant's affidavit, while citing no company rule, states that had IOI been informed of the more than $1,500,000 of insurance applied for by Garde within six months of his IOI application, the company "in accordance with its underwriting standards in effect at the time of application would have declined to issue the policy." This statement is repeated in the affidavit in connection with the question of whether or not Garde's undisclosed financial condition and substantial debt were the basis for denying coverage. Bryant's affidavit makes it clear that, even if Garde had had no debts or financial difficulties, IOI would not, under its established practices, have issued the policy, if it had known of the other applications and policies.

■ The plaintiffs also contend that misrepresentations about other insurance are

not clearly material since they do not increase the risk of the insured's death, the event insured against. They urge that this is a question of disputed fact which precludes summary judgment.

The district court found this case governed by the holdings in *Garde I* and *Garde II*. In those cases several members of the Garde family sought to recover insurance proceeds under other policies issued to the deceased by numerous carriers and made the same contentions made by the plaintiffs here. The appellate court in *Garde II* concluded:

> An insurer has the right to inquire whether its applicants have insurance with it or any other company. Such information may be vital to the preliminary investigation of the proposed insured and may be considered material as a matter of law.... The significance of a misstatement about other insurance may be influenced by the amount of insurance which is not disclosed. This is particularly true when a provision of a later policy limits the extent of recovery where there is other insurance....
>
> Illinois courts have not yet addressed the issue of the effect of a misrepresentation about the existence of other insurance. However, other jurisdictions have found that a failure to reveal other insurance is a material misrepresentation which will void a policy.... Additionally, it should be noted that when the misrepresentation is of an egregious nature, courts often find that it is material....
>
> In the instant case, decedent failed to report over a million dollars of pending and issued insurance.... The existence of the other insurance, if known, would have affected the terms and conditions under which [the insurer] determined whether it would accept the risk involved. It was, therefore, a material misrepresentation.

101 Ill.Dec. at 127, 498 N.E.2d at 309 (citations omitted). In addition, "[t]he materiality of a misrepresentation may be established by an underwriter's testimony," as was done here. *Id.,* 101 Ill.Dec. at 126, 498 N.E.2d at 308. The appellate court in both

*Garde I* and *Garde II* found the misrepresentations on decedent's application to be material as a matter of law.

The plaintiffs here also contend, as they did in *Garde II*, that, because other carriers paid the proceeds on the decedent's policies with them, the misrepresentations cannot be material as a matter of law but must be reviewed on a case by case (policy by policy) basis. Such evidence of action by other carriers is only relevant insofar as it suggests that a particular insurer's standard of insurability "is improbable," and is asserted simply to deny liability in a particular case. *Hildebrand v. Franklin Life Insurance Co.,* 118 Ill.App.3d 861, 74 Ill. Dec. 280, 292, 455 N.E.2d 553, 565 (4th Dist.1983). The appellate court in *Garde II,* as indicated, has already found that the failure to disclose over $1,000,000 of other insurance applied for shortly before the policy applications there involved was a material misrepresentation. At the time of the application here, the amount of other insurance applied for by Garde had increased to more than $1,500,000.

Misrepresentations are material as a matter of law where the risk cannot reasonably be assessed or the policy's conditions would be altered by the insurer. *Great West Steel Industries Ltd. v. Northbrook Insurance Co.,* 138 Ill.App.3d 84, 92 Ill.Dec. 116, 484 N.E.2d 847, 853 (1st Dist. 1985). An insurer is not obligated to substantiate the truth of an insurance application but needs only a good faith basis for refusing coverage. *Allender v. Guardian Life Insurance Co.,* 592 F.Supp. 541, 543 (N.D.Ill.1984), *aff'd,* 789 F.2d 920 (7th Cir. 1986). Such a rejection with respect to a conditional receipt may be applied retroactively. *Hildebrand, supra,* 74 Ill.Dec. at 290, 455 N.E.2d at 563.

Other facts are contested by the plaintiffs but they are not material. For example, the plaintiffs claim that they were denied the right to explain the circumstances of Garde's misrepresentations but they suggest no innocent explanation. The uncontradicted evidence establishes that Garde made false representations in his application and then signed the application

affirming its accuracy. There is no indication that he attempted to subsequently correct it. He died 23 days after signing the application.

The plaintiffs rely heavily on our holding in *American National Bank & Trust Company of Chicago v. Certain Underwriters, Inc.*, 444 F.2d 640, 646–47 (7th Cir.1971) (citations omitted), where we held that the materiality of misrepresentations in an insurance application is a question of fact to be resolved after a trial " 'unless they are of such a nature that all persons would agree that they are or are not material.' " There, no misrepresentations as to overinsurance were deemed material because the correct amount of other insurance was actually listed on the application at issue. *Id.* at 645–46. *Garde II*, on the other hand, establishes that virtually the same misrepresentations as are in the issue here were material.

The plaintiffs suggest that because the defendant conducted a minor inquiry into the decedent's application in the short period prior to his death and accepted his premium deposit it is somehow estopped from making a subsequent investigation after his death. The conditional receipt, however, makes it clear that since the insurer had not actually delivered a policy it could conduct an investigation which could result in a denial of coverage. It is to the applicant's benefit that he retain coverage as of the date of signing the application and this is provided for by initially issuing a receipt. Only in the event of some significant change (e.g., a material misrepresentation) is coverage subsequently denied.

In addition, the plaintiffs suggest that in the two *Garde* cases coverage was properly denied primarily because of the decedent's poor health at the time of his application, whereas here the defendant relies on the decedent's overinsurance. The plaintiffs argue that the latter type of misrepresentation is not material. *Garde I* was based at least in part on Garde's health but *Garde II* was clearly based on the failure to disclose other insurance as well as Garde's financial condition. It is clear from the *Garde II* opinion that the misrepresentations as to the other insurance, the same misrepresentations as here, were material. This finding of materiality under Illinois law was the basis for the district court's grant of summary judgment.

Finally, the plaintiffs argue that IOI rejected coverage under the conditional receipt only after conducting an extraordinary investigation into Garde's financial condition following his death. Citing *Hildebrand, supra*, they argue that such investigations which, but for Garde's death, would not have been undertaken, may not properly be the basis for denying coverage. The plaintiffs claim that the insurance application does not inquire into one's financial condition and therefore this factor may not later be used to deny coverage.

It is clear, however, that the district court granted the defendant's motion based on Garde's material omissions of and misrepresentations as to his more than $1,500,-000 of other insurance issued or applied for, not on his financial condition. The Illinois Appellate Court in *Garde II* also found as a matter of law that failure to disclose more than $1,000,000 in insurance or applications was a material misrepresentation, although it also discussed his financial condition.

### Conclusion

While summary judgment in cases involving alleged material misrepresentations in insurance applications is infrequently warranted, it is appropriate when there is no dispute as to the facts omitted or misstated and they are clearly material either to the acceptance of the risk by the insurer or the hazards to be assumed by it under the policy. This is such a case. In addition, the Illinois Appellate Court has already held that Garde's failure to disclose a lesser amount of insurance was an omission under Illinois law which materially affected the insurer's acceptance of the risk. The judgment of the district court is

AFFIRMED.