723 F.Supp. 155 (1989)
Marilyn BUCK, et al., Plaintiffs,
v.
AMERICAN STATES LIFE INSURANCE COMPANY, Defendant.
No. 88-1548C(1).
United States District Court, E.D. Missouri, E.D.
October 13, 1989.
*156 Mark Bossi, Thompson & Mitchell, St. Louis, Mo., for plaintiffs.
Clark Cole/Kenneth Teasdale, Armstrong, Teasdale, Kramer, Vaughn & Schlafly, St. Louis, Mo., for defendant.

MEMORANDUM
NANGLE, Chief Judge.
This matter is now before the Court on the parties' cross motions for summary judgment. The following facts are undisputed:
In 1986, Joseph Buck, president of JoMar Enterprises, Inc., sought a loan of $300,000.00 from the First National Bank of Belleville in order to obtain additional financing for the company. As collateral for the loan, First National Bank required that Buck obtain a $200,000.00 life insurance policy. Buck obtained the policy from American States Life Insurance Company ("American States") in June of 1986 through a Missouri insurance broker. The policy listed First National Bank and Marilyn Buck as beneficiaries. In his application for insurance, Joseph Buck denied that *157 he had consulted any physician in the five years preceding the application. He said that he had no personal physician and that he had last consulted a physician in 1980, but was unsure of the physician's name or address. He denied that he had heart problems, gallbladder problems, ulcer problems or diabetes.
In reality, Joseph Buck had severe health problems and was under the care of a physician. Buck had been hospitalized in 1983 for gastrointestinal bleeding and ulcers. He was taking prescription drugs for heart problems and chronic diabetes. Furthermore, as early as 1985, Buck had been diagnosed as having gallbladder disease.
Joseph Buck died of cancer in August of 1987. First National Bank, which changed its name to Magna Bank National Association ("Magna") in 1988, submitted a claim for the proceeds of the American States policy. After some investigation American States learned of Buck's prior medical history. In December of 1987, American States informed the bank that it was rescinding Buck's policy because of Buck's misrepresentations. American States refunded the premiums that had been paid thus far to Marilyn Buck. Marilyn Buck and Magna then filed the instant action seeking payment of the policy proceeds.
American States is an Indiana corporation. Mrs. Buck is a citizen of the State of Illinois, and Magna is an Illinois corporation. This Court has jurisdiction by reason of diversity. 28 U.S.C. § 1332. In determining whether summary judgment should issue, the facts and inferences from these facts are viewed in the light most favorable to the non-moving party and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once the moving party has met this burden, however, the non-moving party may not rest on the allegations in its pleadings but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e). See also 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2739 (1983).
Recently, the Supreme Court noted that: "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to `secure the just, speedy and inexpensive determination of every action'." Celotex, 477 U.S. at 327 (quoting Fed.R.Civ.P. 1). Thus, the non-moving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586, 106 S.Ct. at 1356. "Where the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no `genuine issue for trial'." Id. at 587, 106 S.Ct. at 1356. The Eighth Circuit has acknowledged that the "trilogy of recent Supreme Court opinions" demonstrates that the courts should be "more hospitable to summary judgments than in the past" and that a motion for summary judgment "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those cases that really do raise genuine issues of material fact." City of Mt. Pleasant, Iowa v. Associated Electric Cooperative, Inc., 838 F.2d 268, 273 (8th Cir.1988).
The parties' cross motions for summary judgment address the validity of the life insurance policy in light of Joseph Buck's concealment of his medical history in the application. In addition, American States seeks summary judgment against Marilyn Buck under the theory that Mrs. Buck stands to recover none of the policy's proceeds. American States argues that because any proceeds from the policy would be devoted to satisfying the remaining balance of the Bucks' loan with Magna, Mrs. Buck has no interest in the proceeds of the insurance policy and no basis upon which to sue American States. The Court will first consider whether American States was entitled *158 to rescind Joseph Buck's life insurance policy because of the misrepresentations in his application for insurance.

I. AMERICAN STATES' RESCISSION OF THE POLICY
Plaintiffs do not deny that Joseph Buck's statements were misrepresentations. Plaintiff argues, however, that these misrepresentations do not serve to void the policy because the matters that Joseph Buck misrepresented did not actually contribute to Joseph Buck's death. Therefore, plaintiff argues, under the Missouri misrepresentation statute, Mo.Rev.Stat. § 376.580 (1986), American States cannot rely on said misrepresentations to avoid honoring the policy. In order to reach this conclusion, however, the Court must first find that Missouri law controls the disposition of the instant case. Missouri's misrepresentation statute, by its plain language, applies only to policies of insurance on the lives of persons who are citizens of Missouri. Thus, should the Court find that Missouri law applies, it must further conclude that Missouri's misrepresentation statute is unconstitutional, insofar as it deprives non-citizens within its jurisdiction to equal protection of state law. If the Court so finds, then the Court must also find that only the residency requirement of the statute should be stricken as unconstitutional, if plaintiffs' argument is to succeed. Should plaintiffs' position prevail to this juncture, the Court must finally conclude that the misrepresentation statute's admonition that whether the matter represented actually contributed to Joseph Buck's death "shall be a question for the jury," does not apply in the case at bar because the misrepresentations are immaterial as a matter of law. If the Court so finds, then plaintiffs will be entitled to summary judgment.
Defendant, however, challenges plaintiffs' argument at every turn. American States argues first that the law of Illinois, not Missouri, should be used to resolve this matter. Thus, because plaintiffs' argument depends upon the applicability of Missouri law, the Court will first address the issue of choice of law.

A. Choice of Law.

Plaintiffs and American States agree that a federal court sitting in diversity is to apply the choice of law rules of the forum state in order to determine whether the law of the forum state or some other state controls the resolution of the action. See Potter v. St. Louis-San Francisco Railway Co., 622 F.2d 979, 981 (8th Cir. 1980). Plaintiffs assert that Missouri courts apply lex loci contractus analysis in determining whether Missouri law or some other state's law applies to contracts of insurance. American States argues, however, that Missouri courts apply the approach of the Restatement (Second) of Conflict of Laws to contracts cases and that § 192 of the Second Restatement governs the choice of law analysis in the case at bar.
Missouri courts have applied the Second Restatement analysis in cases involving automobile insurance, State Farm Mutual Automobile Insurance Company v. MFA Mutual Insurance Company, 671 S.W.2d 276, 277 (Mo. en banc 1984); Protective Casualty Insurance Co. v. Cook, 734 S.W.2d 898, 905 (Mo.App.1987), and casualty insurance, Crown Center Redevelopment Corp. v. Occidental Fire & Casualty Company of North Carolina, 716 S.W.2d 348, 358 (Mo.App.1986). In addition, the Missouri Court of Appeals held in National Starch and Chemical Corp. v. Newman, 577 S.W.2d 99 (Mo.App.1978), that the Restatement (Second) of Conflicts of Law applies in Missouri to "both tort and contract actions." Id. at 102. This Court, therefore, concludes that the courts of Missouri generally apply the "most significant relationship" test articulated in the Restatement (Second) of Conflict of Laws in resolving choice of law questions with respect to contracts.[1] Thus, this Court will *159 apply the Second Restatement approach to determine whether Missouri law or the law of some other state governs the life insurance contract in question.
Section 192 Restatement (Second) of Conflict of Laws (1971) provides:
The validity of a life insurance contract issued to the insured upon his application and the rights created thereby are determined, in the absence of an effective choice of law by the insured in his application, by the local law of the state where the insured was domiciled at the time the policy was applied for, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.
In the case at bar, the insured was unquestionably domiciled in Illinois. Plaintiffs do not dispute this fact. Plaintiffs argue, however, that American States intended for Missouri law to govern because it attached a "no suicide defense" endorsement to the policy, which Missouri law requires under Mo.Rev.Stat. § 376.620, but which is not required under Illinois law. This Court cannot, however, rely solely upon the inclusion of this endorsement as an affirmative statement that the law of Missouri was to govern this life insurance policy. Indeed, a myriad of explanations exists for the inclusion of the "no suicide defense" endorsement, one of which might well be American States' uncertainty as to which state's law would govern the policy. As the provision would be required under Missouri law, but not Illinois law, the most prudent course for American States to take in the face of uncertainty regarding the controlling law would be to satisfy the extra burden imposed by Missouri, thereby insuring compliance under the law of either state. The endorsement noted by plaintiffs does not provide persuasive evidence of the parties' intent, and this Court will not rely upon so slim a reed to divine the parties' intent.[2]
Having concluded that the policy contains no "effective choice of law" provision and that the insured was domiciled in Illinois, this Court must still consider whether Missouri has "a more significant relationship" than Illinois with respect to the issue of the effect of Joseph Buck's misrepresentations, under the principles stated in § 6 of the Restatement. Comment c to § 192 of the Restatement notes that life insurance is a "matter of intense public concern" and that issues arising under a life insurance policy are properly determined by the state that has the dominant interest in the insured with respect to such issues, which is usually the domicile of the insured. In the instant case, the issue at hand is whether plaintiffs should enjoy the protection of the Missouri misrepresentation statute. Certainly Missouri has not expressed an interest in extending the protection of the misrepresentation statute to non-residents. Indeed, the misrepresentation statute excludes non-residents. In this respect, Comment b to § 6 of the Restatement is instructive:

*160 The court should give a local statute the range of application intended by the legislature when these intentions can be ascertained and can constitutionally be given effect. If the legislature intended that the statute should be applied to the out-of-state facts involved, the court should so apply it unless constitutional considerations forbid. On the other hand, if the legislature intended that the statute should be applied only to acts taking place within the state, the statute should not be given a wider range of application. Sometimes a statute's intended range of application will be apparent on its face, as when it expressly applies to all citizens of a state including those who are living abroad. When the statute is silent as to its range of application, the intentions of the legislature on the subject can sometimes be ascertained by a process of interpretation and construction. Provided that it is constitutional to do so, the court will apply a local statute in the manner intended by the legislature even when the local law of another state would be applicable under usual choice-of-law principles.
In addition, Comment e to § 6 of the Restatement provides:
Every rule of law, whether embodied in a statute or in a common law rule, was designed to achieve one or more purposes. A court should have regard for these purposes in determining whether to apply its own rule or the rule of another state in the decision of a particular issue. If the purposes sought to be achieved by a local statute or common law rule would be furthered by its application to out-of-state facts, this is a weighty reason why such application should be made. On the other hand, the court is under no compulsion to apply the statute or rule to such out-of-state facts since the originating legislature or court had no ascertainable intentions on the subject.
From the foregoing, this Court concludes that Missouri does not have a "more significant relationship" to this transaction than Illinois, with respect to the issue of the effect of misrepresentations made by Illinois citizens when acquiring life insurance. The law of the insured's domicile generally controls issues arising under a life insurance policy because a state generally has a strong interest in protecting its own citizens. Missouri has exhibited such an interest by enacting its misrepresentation statute. It has not, however, indicated any interest in protecting the citizenry of Illinois. On the contrary, Missouri has clearly indicated that it wishes to extend the protection of the misrepresentation statute only to Missouri citizens. Missouri's interests would not be furthered by extending the misrepresentation statute's protection to Illinois citizens. Indeed, to extend the statute to citizens of other states would contravene Missouri's express intent to limit the statute's applicability to Missouri residents. Under the approach of the Restatement, the law of Illinois applies. Because plaintiffs' motion for summary judgment relies on applicability of Missouri law, plaintiffs' motion for summary judgment will be denied.

B. The Effect of the Misrepresentations Under Illinois Law.

The Court must next determine whether American States is, under the law of Illinois, entitled to judgment as a matter of law. Illinois' misrepresentation statute provides in pertinent part:
No such misrepresentation or false warranty shall defeat or avoid the policy unless it shall have been made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company.
Ill.Rev.Stat., ch. 73, par. 766 (1987). Under Illinois law a statement of fact in an insurance policy is not a "misrepresentation" unless it is untrue and affects the risk undertaken by the insurer. Garde by Garde v. Country Life Insurance Co., 147 Ill.App.3d 1023, 101 Ill.Dec. 120, 126, 498 N.E.2d 302, 308 (1986). A misrepresentation is material when "reasonably careful and intelligent men would have regarded the facts stated as substantially increasing the chances of the events insured against, so as to cause a rejection of the application *161 or different conditions." Id. Failure to disclose material information may constitute a material misrepresentation. Id. Furthermore, in the case of life insurance, the insured need not die from the misrepresented ailment in order for the misrepresentation to be considered material. Id. Generally, materiality is a question of fact for the jury. Id. When, however, "the misrepresentation is of such a nature that all would agree that it is or is not material, the question is appropriate for summary judgment." Id.
In Garde by Garde v. Country Life Ins. Co., 147 Ill.App.3d 1023, 101 Ill.Dec. 120, 498 N.E.2d 302 (1986), the insured stated in his application for life insurance that he had not undergone an electrocardiogram for purposes other than insurance and that he had not been treated for chest pain or rapid heart rate. Id. 101 Ill.Dec. at 127, 498 N.E.2d at 309. In fact, the insured had been hospitalized for a short time five years before for chest pain with a rapid heart rate. Id. Likewise, he had undergone an electrocardiogram for diagnostic purposes. Id. The insurance company stated that had this information been known, the insurance company's instruction manual would have precluded issuance of the insurance on the terms and at the rate that was ultimately quoted. Id. The trial court held that reasonable minds could not differ as to the materiality of the misrepresentations and granted summary judgment in favor of the insurance company. Id. The Court of Appeals affirmed. Id. 101 Ill.Dec. at 127, 498 N.E.2d at 309.
In Hatch v. Woodmen Accident & Life Company, 88 Ill.App.3d 36, 42 Ill.Dec. 925, 409 N.E.2d 540 (1980), the insured represented that he was free from physical impairment, that he had no heart problems, that he had no "other disease" and that he had no family physician. Id. 42 Ill.Dec. at 927, 409 N.E.2d at 542. He also admitted that he had consulted a physician within the past three years, but only for an ankle sprain. Id. In fact, the insured had been treated 50 times by a single physician for a period extending eight years prior to the execution of the insurance application. Id. He had been hospitalized for a liver biopsy, palpitation and apprehension and had been diagnosed as having mild emphysema. Id. The trial court found that, although the insured had not intended to deceive, his failure to disclose certain hospitalizations were material misrepresentations. Id. The trial court granted summary judgment, and the Court of Appeals affirmed. Id. 42 Ill.Dec. at 928, 409 N.E.2d at 543.
As the Court notes above, plaintiffs do not dispute that Joseph Buck made misrepresentations in his application for life insurance. Defendant has provided the affidavit of Edward Chism from American States' underwriting department. Edward Chism states that but for Buck's misrepresentations, the life insurance policy would not have been issued. This Court concludes that reasonable minds could not differ that Buck's misrepresentations were material. Mr. Buck's misrepresentations were at the very least as significant as those involved in Garde by Garde and Hatch. Indeed, Mr. Buck suffered from a plethora of ailments that this Court would view as extremely serious, and which would greatly increase the chances of the occurrence of the event insured against: death.[3]
*162 As the Court concludes that Joseph Buck's misrepresentations were material as a matter of law and that American States was, therefore, entitled to rescind Buck's policy, the Court need not consider whether Marilyn Buck has standing to sue American States for the proceeds of the policy. Accordingly, and for the foregoing reasons, American States' motion for summary judgment will be granted.
NOTES
[1] Admittedly, in Miller v. Home Insurance Company, 605 S.W.2d 778 (Mo. en banc 1980), the Missouri Supreme Court refused to apply the Second Restatement test to a case involving a group insurance policy. Nevertheless, this Court can only conclude from its survey of Missouri cases that the Miller decision was limited to the particular type of insurance contract at issue in that case: group insurance. See also United States v. Aid Insurance Company, 642 F.Supp. 535 (E.D.Mo.1986) (applying Second Restatement approach to insurance policy); Moss v. National Life and Accident Insurance Company, 385 F.Supp. 1291, 1297 (W.D.Mo. 1974) (Missouri would follow Second Restatement approach with contracts/life insurance); accord Nelson v. Aetna Life Insurance Co., 359 F.Supp. 271, 287 (W.D.Mo.1973).
[2] Indeed, it is difficult to imagine what American States sought to achieve by including the "no suicide defense" endorsement. The endorsement reads:

Suicide is no defense to payment of life insurance benefits nor is suicide while insane a defense to payment of accidental death benefits, if any, under this policy where the policy is issued to a Missouri citizen, unless the insurer can show that the insured intended suicide when he applied for the policy, regardless of any language to the contrary in the policy.
This provision, by its terms, only applies if a citizen of Missouri is the insured. Thus, its inclusion in Joseph Buck's policy is a nullity, because Joseph Buck was a citizen of Illinois. The policy lists Joseph Buck's address as Warden, Illinois. Why the endorsement would be included in a policy issued to an Illinois citizen is a mystery to this Court. Perhaps the endorsement can best be explained as "boilerplate" in policies acquired through Missouri agents.
[3] The Court would also note that the record clearly indicates (and plaintiffs do not deny) that Joseph Buck made the misrepresentations in question with actual intent to deceive American States. The Illinois misrepresentation statute permits an insurance company to avoid a policy if a misrepresentation is "made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company." Ill.Rev.Stat. ch. 73, par. 766 (1987) (emphasis added). This provision is to be read in the disjunctive. Roberts v. National Liberty Group of Companies, 159 Ill. App.3d 706, 111 Ill.Dec. 403, 405, 512 N.E.2d 792, 794 (Ill.App.1987); National Boulevard Bank v. Georgetown Life Ins. Co., 129 Ill.App.3d 73, 84 Ill.Dec. 330, 336, 472 N.E.2d 80, 86 (Ill. App.1984). An insurance company, therefore, meets its burden under the statute and is entitled to avoid a policy even if it demonstrates only that the insured intended to deceive through his misrepresentations. Roberts, 111 Ill.Dec. at 405, 512 N.E.2d at 794; National Boulevard Bank, 84 Ill.Dec. at 336, 472 N.E.2d at 86. See also Apolskis v. Concord Life Ins. Co., 445 F.2d 31 (7th Cir.1971). Thus, this Court concludes that reasonable minds could not differ that Joseph Buck actually intended to deceive through his misrepresentations and that defendant is, therefore, entitled to summary judgment under the "actual intent" prong of the Illinois misrepresentation statute as well as the "materiality" prong.